[Civ. No. 29148.   Second Dist., Div. Four.   May 19, 1967.]

COUNTY OF SANTA BARBARA, Plaintiff and Appellant, v. PURCELL, INC., Defendant and Appellant; UNITED OUTDOOR ADVERTISING CO., INC., Intervener and Appellant.

Robert K. Cutler, County Counsel, Dana D. Smith and Robert D. Curiel, Assistant County Counsel, and Stanley C. Hatch for Plaintiff and Appellant.

J. F. Goux and Kenneth R. Nuss for Defendant and Appellant.

Belan M. Wagner for Intervener and Appellant.

FILES, P. J.—On November 16, 1962, the County of Santa Barbara filed a complaint in the Santa Barbara County Superior Court against Purcell, Inc., a company engaged in the outdoor advertising business, to compel removal of various billboards in the vicinity of Carpinteria, Summerland and Santa Maria maintained in violation of county ordinances. Subsequently, United Outdoor Advertising Co., Inc. intervened and became a codefendant with Purcell. A permanent injunction was entered on October 6, 1964, requiring the removal of all billboards involved in the litigation except those made illegal under county ordinance 1042 covering the Santa Maria area. Defendant and intervener (who will be referred to hereafter as defendants) have appealed from the portion of the judgment which is adverse to them and plaintiff has appealed from the portion which denies relief in the Santa Maria area.

## Background

On January 29, 1951, the Santa Barbara County Board of Supervisors adopted ordinance 661, containing land use regulations and definitions of terms, creating zones and establishing permit procedures and penalties for violation. That ordinance as originally enacted applied only to the unincorporated Town of Goleta.

Article VII section 3 of this ordinance limits the size and character of signs and advertising structures which are permitted in each kind of district. Article VIII section 4 provides that a nonconforming outdoor advertising sign or structure may remain for five years from the date of the adoption of the ordinance.

On May 26, 1952, ordinance 696 was adopted, amending ordinance 661 in a number of respects not material here. This amendment further declared in substance that the plan and regulations as set forth in ordinance 661 would become applicable to other territory shown upon maps adopted in the future.

Ordinance 825, enacted May 7, 1956, adopted maps of the Summerland area as an amendment to ordinance 661, thereby making the provisions of that ordinance applicable to the area shown on those maps.

On May 28, 1956, ordinance 833 was adopted for the purpose of correcting an error in the publication of ordinance 825.

On April 1, 1957, ordinance 888 was adopted, containing maps of the Carpinteria area, as a further amendment to ordinance 661.

On August 26, 1957, ordinance 909 adopted maps of additional portions of the Carpinteria area.

On July 27, 1959, ordinance 1042 adopted maps of the Santa Maria area.

The parties have stipulated that each of the billboards involved in this action was erected prior to the enactment of the applicable ordinance, and that each sign is a prohibited use of the property where it is located.

### Constitutionality

The zoning ordinances here in question do not prohibit advertising signs and structures altogether. The effect is to exclude defendants' billboards from the localities where defendants prefer to maintain them. The signs here involved are all located along Highway 101, which has been designated on the state's master plan as a ''scenic highway,'' requiring ''special scenic conservation treatment.'' (Sts. & Hy. Code, §§ 260-263.)

The contention of the defendants is that the county has abused and exceeded its powers in applying these ordinances to defendants. The standard by which the reasonableness of a zoning ordinance is tested is stated in *Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515, 522 [20 Cal.Rptr. 638, 370 P.2d 342] :

''As a corollary to this recognized principle of the capacity of the police power to meet the reasonable current requirements of time and place and period in history is the equally well settled rule that the determination of the necessity and

form of such regulations, as is true with all exercises of the police power, is primarily a legislative and not a judicial function, and is to be tested in the courts not by what the judges individually or collectively may think of the wisdom or necessity of a particular regulation, but solely by the answer to the question is there any reasonable basis in fact to support the legislative determination of the regulation's wisdom and necessity?''

Defendants assert that these ordinances ''bottom solely upon aesthetics.'' Their argument, based upon their interpretation of *Varney & Green* v. *Williams* (1909) 155 Cal. 318 [100 P. 867, 132 Am.St.Rep. 88, 21 L.R.A. N.S. 741], is that zoning laws may only be used to protect the economic interests of a property owner and not to preserve the priceless beauty of a countryside for all men. It is unnecessary to meet that argument directly, for the trial court has found that in Santa Barbara County scenic environment is commercial.[1] The trial court found that people come to the county because of its natural beauty, and that the maintenance of billboards along the highway may reasonably be believed to have an adverse effect upon the economy.

Defendants' arguments as to the constitutionality of these ordinances are answered by what has been said in *National Advertising Co.* v. *County of Monterey* (1962) 211 Cal.App. 2d 375 [27 Cal.Rptr. 136]; *Metromedia, Inc.* v. *City of Pasadena* (1963) 216 Cal.App.2d 270 [30 Cal.Rptr. 731]; and *Burk* v. *Municipal Court* (1964) 229 Cal.App.2d 696 [40 Cal. Rptr. 425].

### Effect of the Outdoor Advertising Act

The Outdoor Advertising Act, as enacted by the state Legislature in 1939 (Bus. & Prof. Code, § 5200 et seq.), contained the following language:

''It is the intention of the Legislature to occupy the whole field of regulation by the provisions of this chapter except that nothing in this chapter prohibits enforcement of any or all of its provisions by persons designated so to act by appro-

---

[1]Defendants' brief asserts that there is insufficient evidence to support this finding. But this appeal is here on a partial reporter's transcript, prepared under rule 4 of the California Rules of Court. Defendants did not list this issue as one of the points to be raised on appeal when the record was prepared. Plaintiff therefore had no occasion to see that evidence on this subject, which presumably was received at the trial, was brought up in the record on appeal. Consequently defendants are not entitled to a review of this contention. (*McDaniel* v. *Dowell*, 210 Cal. App.2d 26, 30 [26 Cal.Rptr. 140].)

priate ordinances duly adopted by any county of this State nor does anything prohibit the passage by any county of reasonable land use or zoning regulations affecting the placing of advertising displays in accordance with provisions of Chapter 838 of the Statutes of 1929, relating to zoning.'' (Bus. & Prof. Code, § 5227.)

As of the time section 5227 was enacted, chapter 838 of the Statutes of 1929, called ''The Planning Act,'' governed the procedure by which a county was authorized to adopt a zoning ordinance.

In 1947 the Legislature repealed The Planning Act of 1929 and replaced it with ''The Conservation and Planning Act.'' (Stats. 1947, ch. 807, p. 1909.)

In 1951 the Legislature enacted as a part of the Government Code (§ 65000 et seq.) ''The Conservation and Planning Law.'' The 1947 Act was concurrently repealed. (Stats. 1951, ch. 334, p. 675.)

The Government Code provisions have been continued in force, subject to amendment, addition and repeal of specific sections from time to time. The name of the Act was changed in 1956 to the ''Planning Law'' (Stats. 1956, 1st Ex.Sess., ch. 33, § 4, p. 359) and changed again in 1965 to the ''Planning and Zoning Law.'' (Stats. 1965, ch. 1880, § 1, p. 4334.)

Defendants point out that Business and Professions Code section 5227, quoted above, was not amended until 1957, when the words ''Chapter 838 of the Statutes of 1929'' were deleted and replaced with the words ''the Planning Law, Chapter 1 (commencing with Section 65000) of Title 7 of the Government Code.''

Although each of the successive planning statutes provided a comprehensive system for the adoption of local zoning ordinances, the prescribed procedure varied somewhat. One important change was that a 1953 amendment reduced the number of hearings required before the planning commission from two to one.

Defendants argue that since section 5227, as enacted in 1939, said that counties could not regulate billboards except by a zoning ordinance adopted under the 1929 Act, and since that language in section 5227 was not changed until 1957, therefore no zoning ordinance enacted prior to 1957 could affect billboards unless it was enacted in accordance with the 1929 Act.

Such an interpretation would produce anomolous and absurd results which we cannot regard as the legislative

intent. It is apparent that all of the planning statutes listed above are intended to be a continuation of the 1929 Act, with the modifications indicated by the differences between the earlier acts and their successors. (See *Perkins Mfg. Co.* v. *Clinton Constr. Co.*, 211 Cal. 228, 237 [295 P. 1, 75 A.L.R. 439].)

█ It is also apparent that it was the intent of the Legislature, as expressed in the Outdoor Advertising Act (Bus. & Prof. Code, § 5227) that local governments might regulate billboards under zoning laws. After 1947, any zoning law could be adopted only under the provisions of the 1947 Act, or one of its successors. The Legislature could not have intended that after 1947 a zoning ordinance should be adopted under the 1929 Act insofar as it affected billboards and under the 1947 Act insofar as it affected every other land use. Nor is it reasonable to suppose that the Legislature intended to exempt outdoor advertising from all zoning ordinances adopted between 1947 and 1957. We are satisfied that the language of section 5227 referring to zoning regulations in accordance with the 1929 Act means also zoning regulations enacted in accordance with any currently applicable successor statute.

The Attorney General has expressed the same opinion. (21 Ops.Cal.Atty.Gen. 43, 44 (1953).)

*Rancho Santa Anita, Inc.* v. *City of Arcadia*, 20 Cal.2d 319, 322 [125 P.2d 475], cited by defendants, does not conflict with this analysis. In the cited case the City of Arcadia had, in its taxing statute, incorporated by reference the provisions of title IX of the Political Code of the state, which code would not otherwise have applied to the city. Subsequently the Legislature amended the Political Code. The Supreme Court concluded that the city council had intended to incorporate only the language of the Political Code as it existed when the city ordinance was adopted, not any change which the Legislature might thereafter see fit to make in its code.

In the *Arcadia* case the city council had incorporated the statute of another jurisdiction merely as a convenient form of expression. There was no necessity that the taxing procedure of the City of Arcadia conform to the Political Code. █ In the case at bench the statutes compel the conclusion that it was the legislative purpose to integrate billboard regulation with zoning. It would be incongruous to freeze that relationship to procedures which became obsolete by amendments to the zoning statutes.

## Procedure in Adopting Ordinances

All of the billboards enjoined by the judgment here are located in areas described in ordinances 833, 888 or 909. It is therefore necessary to consider whether each of these was adopted in compliance with the applicable state statute. For reasons which we shall point out, it is unnecessary to discuss the procedures by which other ordinances were adopted.

Ordinance 661, adopted in 1951, and ordinance 696, adopted in 1952, set forth the terms of the comprehensive zoning plan which was initially adopted for the Goleta area, and then, by subsequent ordinances, made applicable to other portions of the county. In 1956, before enacting ordinance 833, which adopted zoning maps for the Summerland area, the board of supervisors and the planning commission complied substantially with all of the procedures required by the then existing state law for the adoption of a zoning ordinance. So far as the Summerland locality is concerned, it is immaterial whether there were procedural irregularities in the adoption of ordinances 661 and 696 in 1951 and 1952 respectively. The 1956 ordinance, in effect, reenacted those provisions for the Summerland area.

Except for the objections hereinafter considered, the same is true of ordinances 888, 909 and 1042.

■ Defendants seek to capitalize on the fact that ordinance 833 was preceded by ordinance 825, adopted May 7, 1956, relating to the same area. The publication of ordinance 825 failed to include a vicinity map, which would aid in showing the locality of the small-area zoning maps which were a part of the ordinance. To correct this, the supervisors on May 28, 1956, repealed ordinance 825 and reenacted the identical ordinance as 833, which was thereupon duly published with all of the appropriate maps. The preliminary procedures, including the notice and hearing before the planning commission, and the filing of the commission's findings and report, had been completed prior to May 7 and constitute procedural support for the ordinance adopted on May 28.

■ Ordinance 888, which applies to the Carpinteria Valley, is attacked by defendants upon the ground that the planning commission failed to submit to the supervisors a proper "report of findings, summaries of hearings, and recommendations" as required by Government Code section 65653.[2]

---

[2]Government Code section 65653 (as it read between 1953 and 1965):
"A copy of any precise plan, regulation, or amendment recommended pursuant to this article shall be submitted to the legislative body and

The record shows that the planning commission consid-ered the zoning plan for the Carpinteria Valley in two public meetings. The detailed minutes of those meetings stated what persons had appeared and what request each had made concerning the provisions of the proposed ordinance. The report of the commission included these detailed minutes, the precise plan which was recommended, and a resolution which recited that the commission had held the required hearing, that it had concluded that the plan was "reasonable and logical and in the best interest of the county."

Defendants argue that this is not a sufficient finding. They assert that there was a "conflict in the evidence before the Planning Commission," and cite the testimony given in court by the commission's secretary. The record fails to disclose any "conflicting evidence" in the legal sense. What the minutes show, and what the secretary doubtless meant by his testimony,[3] was that conflicting opinions were expressed by the people who came before the commission to advocate one thing or another. Those conflicts could be resolved only by the selection of the particular zoning plan which the commission concluded was best for the county as a whole. Defendants have not pointed to any particular issue upon which any more specific finding could have been made, nor have they suggested any prejudice to anyone from the failure of the commission to make findings of other kinds or in greater detail.

The findings of a local commission, composed of laymen, are expected to be informal. They are not required to meet the standards of judicial findings of fact. (*Cantrell* v. *Board of Supervisors* (1948) 87 Cal.App.2d 471, 479 [197 P.2d 218]; *Bartholomae Oil Corp.* v. *Seager* (1939) 35 Cal. App.2d 77, 80 [94 P.2d 614].) In *Bailey* v. *County of Los Angeles* (1956) 46 Cal.2d 132 [293 P.2d 449], the report

shall be accompanied by a report of findings, summaries of hearings, and recommendations of the planning commission.''

[3] "Q. (By Mr. Sink) Mr. Johnson, referring now to the two public hearings of the Commission in connection with its consideration of Ordinance 661, is it correct that there was conflicting evidence received at those hearings?

"A. That is true.

"Q. In other words, on the part of the public, there was at least a difference of opinion as to the merits of the ordinance?

"A. Correct.

" . . . . . . . . . .

"Q. But as to the remaining three ordinances, which are 846, 888 and 1042, is it correct that there were hearings and there was conflicting evidence at each of those hearings?

"A. That is true, yes."

of the planning commission was held to be legally sufficient, though it stated only that the commission had considered and approved the proposed ordinance. The Supreme Court said (at p. 136):

"The only finding which could here have been made was that the proposed ordinance was necessary for the general public welfare and interest. Since there is nothing to the contrary in the record before us, this finding may be presumed from the recommendation made."

The *Bailey* case involved only a relatively simple amendment to an existing zoning law. Thus the decision does not carry the implication that any zoning ordinance, however complex, may be upheld if supported only by the kind of brief report which was approved in that case. But the *Bailey* decision is significant for its recognition that an informal report is legally sufficient if it meets the needs of the particular situation.

Two cases cited by defendants are distinguishable. In *Hein* v. *City of Daly City* (1958) 165 Cal.App.2d 401 [332 P.2d 120], the report of the planning commission consisted only of a letter, which stated that the commission had considered the petition of an individual for a rezoning, that the rezoning would not be detrimental to the neighborhood, and that the commission recommended it. This report was held to be insufficient. The court pointed out that it included neither a copy of any recommended plan or amendment, nor any "summaries of hearings."

In *Williams* v. *City of San Bruno* (1963) 217 Cal.App.2d 480 [31 Cal.Rptr. 854], the court overturned an ordinance which had rezoned 77 acres of plaintiffs' property to an A-R classification so as to prevent the construction of apartments on it. In the hearings before the commission there was a sharp dispute between the property owners and others as to whether (1) apartments on this site would overcrowd the schools, (2) whether there was a need for apartments or a need for more A-R land in the city, and (3) whether it would be economically feasible to develop the land for A-R use in view of its hilly character. The report of the commission consisted only of a resolution stating that two hearings had been held, that the plan was in the public interest and that it was recommended for adoption. The court pointed out that critical issues of fact had been presented to the commission, and that the reasonableness of the zone change depended to some extent upon what facts were found. Under these circumstances the city

council should have had the benefit of more specific findings before it acted upon the proposal.

In the case at bench the question before the planning commission was whether an existing system should be extended to cover additional areas. Those appearing before the commission expressed their preferences, but no factual issues of the kind involved in *Williams* were raised, so far as appears from the record. The report of the commission here was adequate for the purpose.

Ordinance 909 has not been attacked upon any grounds not heretofore discussed, and hence requires no further comment.

■ The trial court found that ordinance 1042 was adopted in compliance with all applicable procedural requirements except that the report of the planning commission was not accompanied by a summary of hearings when forwarded to the board of supervisors. Upon this ground the trial court held ordinance 1042 to be invalid.

The record contains a resolution of the planning commission adopted June 10, 1959, which states:

"WHEREAS, the Santa Barbara County Planning Commission has held the required public hearing on the proposal to apply permanent zoning regulations in the Orcutt area; and

"WHEREAS, as a result of the hearings held in Orcutt and in Santa Barbara, testimoney [*sic*] was presented by property owners in favor of the proposed permanent zoning regulations; and

"WHEREAS, the Planning Commission has found that the land's [*sic*] suitable for use in the zoning classifications recommended; and

"WHEREAS, such reclassification appears logical and in the best interests of the County of Santa Barbara and its residents thereof;

"Now, THEREFORE, BE IT HEREBY RESOLVED:

"1) That the above facts are true and correct.

"2) That the Planning Commission recommends adoption of an amendment to Ordinance No. 661 in accord with the zoning classifications as shown on the attached maps. . . ."

Subsequently the board of supervisors referred the matter back to the planning commission for review because of some subdivision activity in the area. On July 22, 1959, the commis-

sion adopted a resolution reporting that it had reviewed the plan and as a result had found that certain changes were "desireable [*sic*] as a means of recognizing approved subdivisions," and recommended adoption of the amended plan as shown on maps which were attached.

The two resolutions constituted the only written report of the commission which was shown to have been made with respect to ordinance 1042, though there was evidence that the minutes of the commission are usually furnished to the individual supervisors and the proceedings of the commission are always reported orally to the board.

It should be noted that the resolution reports that at the hearing property owners presented evidence in favor of the plan, but it does not indicate that any factual conflict developed. Further there is no evidence in the record before the court that there were any factual issues of the kind involved in the *Williams* case, *supra*, 217 Cal.App.2d 480. Applying the familiar presumption of the regularity of official acts (Code Civ. Proc., § 1963, subd. 15, now Evid. Code, § 664), we assume that the report was a truthful one. Under the circumstances, we are unable to see how anyone could have been prejudiced by the lack of the detailed minutes which would have shown more specifically who appeared and what each had to say in support of the proposed plan. The report here is well within the standard indicated in the *Bailey* case. It is not subject to the defects which were fatal in *Hein*, for here the commission did summarize the hearings in general language and it did formally recommend and present a precise and complete plan. Upon this record defendants are not entitled to avoid compliance with ordinance 1042.

### The Nonconforming Use Clause

Defendants' final argument is based upon their interpretation of article VIII, section 4, of ordinance 661 which declares "Any outdoor advertising sign or structure as defined in this Ordinance which lawfully existed and was maintained at the time of adoption of this Ordinance may be continued . . . [and] shall be completely removed from the premises not later than five years from the date of the adoption of this Ordinance." Defendants point out that ordinance 661 was enacted January 29, 1951, to apply only to the Goleta area. From this, defendants argue that "there is no provision for the removal of any outdoor advertising sign or structure save and except with respect to those which were non-conforming at the time .

of the adoption of Ordinance No. 661 which was on January 29, 1951; . . ." ·

This argument overlooks the language of ordinance 661 and the amending ordinances.

Article I, section 4, of ordinance 661 provides "Except as hereinafter otherwise provided no land shall be used and no building, structure, or improvement shall be used, . . ." except in conformity with the ordinance. The amending ordinances 833, 888 and 909 made this language applicable to the land where the defendants' billboards are located. This clause would have made defendants' use illegal immediately upon the adoption of the amending ordinances, but for the ameliorating effect of article VIII section 4. We think it clear enough from these ordinances, read together, that when, for example, ordinance 833 was adopted in 1956, making the terms of ordinance 661 applicable to the Summerland area, the phrase "at the time of adoption of this Ordinance" meant 1956 as it applied to Summerland.

The portion of the judgment which enjoins defendants is affirmed. Insofar as the judgment denies enforcement of ordinance 1042, it is reversed, and the superior court is directed to modify its injunction so as to include the area to which ordinance 1042 applies.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied June 7, 1967, and the petition of the defendant and appellant and the intervener and appellant for a hearing by the Supreme Court was denied July 12, 1967.