[Civ. No. 23681.   First Dist., Div. Two.   July 25, 1967.]

GEORGE MELTON, Plaintiff and Appellant, v. THE CITY OF SAN PABLO, Defendant and Respondent.

Joseph Landisman and Francis T. Cornish for Plaintiff and Appellant.

Leland F. Reaves for Defendant and Respondent.

TAYLOR, J.—This is an appeal from a judgment for defendant, City of San Pablo (hereafter City), in an action seeking declaratory relief to determine the constitutionality of a retroactive zoning ordinance requiring all portable or temporary vending establishments to obtain a use permit. The major contentions concern the constitutionality and interpretation of the ordinance and whether the trial court correctly concluded that plaintiff's use of his property was not a preexisting lawful nonconforming use.

The record reveals the following facts, which are not in dispute: In October 1963 plaintiff acquired a parcel of property in the City and moved into the house located on the property. The parcel was zoned for commercial use, including the restaurant business. In November 1963 plaintiff brought a remodeled bus on his property, connected it to the utility lines serving his home, and surrounded it with a small picket fence. After obtaining the necessary business licenses and health permits, plaintiff began the operation of a short-order restaurant in the bus.

On April 6, 1964, the city council adopted the amendment to its zoning ordinance here in dispute, Ordinance No. 455, set out in full below.[1] Plaintiff applied for a use permit under Ordinance No. 455 and indicated that his restaurant was a self-contained unit that could be moved on a moment's notice.

---

[1] "4.1 Uses: (a) No theatre, circus, carnival, amusement park, open air theatre, race track, private recreation centers, or mobile, portable or temporary vending establishments, other than trailer sales, or other similar establishment shall be established in any District unless and until a

The city council issued a use permit allowing plaintiff to operate his restaurant as a portable or temporary use for 6 months. After the expiration of the 6-month period, plaintiff made no further application for a permit, but filed this action challenging the constitutionality of Ordinance No. 455. His complaint for declaratory relief alleged that his restaurant business was not mobile, portable or temporary, and sought a declaration that Ordinance No. 455 did not apply to his property.

At the trial, plaintiff conceded that the bus was movable, but indicated it was a permanent installation on his property. The city building inspector stated that the bus had no foundation and was not framed in the normal way that buildings are framed; that it did not meet the building codes in any way and that plaintiff had connected the bus to the gas, electrical, water and sewer lines of his home without any permits from or inspection by the building department of the City, as required by the City's plumbing and electrical codes.

The trial court found the facts substantially as stated above and further found that Ordinance No. 455 was constitutional, and that plaintiff's use of his property was mobile and portable within the meaning of the ordinance, as well as a violation of the City's building, electrical and plumbing codes. Accordingly, the court concluded that Ordinance No. 455 applied to plaintiff's business.

On this appeal, plaintiff contends: that the ordinance is an unconstitutional exercise of the police power and is unconstitutionally vague as it lacks standards concerning its application; that the trial court's findings and conclusions concerning his violations of the plumbing, building and electrical codes of the City are not supported by the evidence or relevant to the instant action as the codes apply only to buildings; that the court erroneously interpreted the language of the ordinance to apply it retroactively; and that, in any event, the ordinance could not properly be applied to his lawful pre-existing use, which was not a nuisance.

We turn first to the main question presented, namely, the constitutionality of Ordinance No. 455. Plaintiff contends that the ordinance is unconstitutional as it is an improper

Use Permit is first secured for the establishment, maintenance and operation of such use; that this section is expressly made retroactive and shall apply to any mobile, portable or temporary vending establishment not constructed in accordance with the Building Code of the City of San Pablo.''

exercise of the police power designed to put him out of business and lacks any standards for its application.

We approach the problem with certain well established principles in mind. ■ Municipal ordinances are presumed to be constitutional if any rational consideration supports their enactment (*Zahn* v. *Board of Public Works*, 195 Cal. 497 [234 P. 388], affd., 274 U.S. 325 [71 L.Ed. 1074, 47 S.Ct. 594]; *Miller* v. *Board of Public Works*, 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479]). If any rational motive exists for the exercise of the police power, the motive for its exercise becomes immaterial and not a proper subject of inquiry and the court will not substitute its judgment for that of the legislative body (*Simpson* v. *City of Los Angeles*, 4 Cal.2d 60, 65 [47 P.2d 474], *Stahm* v. *Klein*, 179 Cal.App.2d 512, 518-520 [4 Cal.Rptr. 137]). Whether the regulation is arbitrary or unreasonable must be determined under the established rules governing judicial review of exercises of the police power. ■ That power is elastic, and capable of expansion to meet existing conditions of modern life (*National Advertising Co.* v. *County of Monterey*, 211 Cal.App.2d 375, 377-378 [27 Cal.Rptr. 136]).

The standard by which the reasonableness of a zoning ordinance is tested is stated in *Consolidated Rock Products Co.* v. *City of Los Angeles*, 57 Cal.2d 515, at p. 522 [20 Cal. Rptr. 638, 370 P.2d 342], as follows: ''As a corollary to this recognized principle of the capacity of the police power to meet the reasonable current requirements of time and place and period in history is the equally well settled rule that the determination of the necessity and form of such regulations, as is true with all exercises of the police power, is primarily a legislative and not a judicial function, and is to be tested in the courts not by what the judges individually or collectively may think of the wisdom or necessity of a particular regulation, but solely by the answer to the question is there any reasonable basis in fact to support the legislative determination of the regulation's wisdom and necessity?''

■ If the necessity or propriety of a zoning regulation is a question upon which reasonable minds might differ (*Miller* v. *Board of Public Works, supra*) or is fairly debatable (*Lockard* v. *City of Los Angeles*, 33 Cal.2d 453, 462 [202 P.2d 38, 7 A.L.R.2d 990]), the legislative determination will not be disturbed. The courts may differ with the Legislature as to the wisdom and propriety of a particular enactment as a means of accomplishing a particular end, but as long as

there are considerations of public health, safety, morals, or general welfare which the legislative body may have had in mind and which would justify the regulation, it must be assumed by the court that the legislative body had those considerations in mind and that those considerations did justify the regulation (*Miller* v. *Board of Public Works, supra,* p. 490).

Thus, we must determine whether the San Pablo City Council could reasonably have had such considerations in mind in adopting Ordinance No. 455 (*Burk* v. *Municipal Court,* 229 Cal.App.2d 696, 701 [40 Cal.Rptr. 425]). A reading of the entire ordinance indicates that it was designed to regulate various kinds of temporary businesses such as theatres and circuses, and made retroactive with respect to temporary or mobile vending establishments not constructed in accordance with the City's building codes. Although there are no California authorities precisely in point, there are many pertinent authorities from other jurisdictions upholding the validity of zoning ordinances that severely restrict or prohibit the location and use of house trailers or mobile homes (*Wright* v. *Michaud* (1964) 160 Me. 164 [200 A.2d 543]).

In the leading case of *Napierkowski* v. *Gloucester Tp.* (1959) 29 N.J. 481 [150 A.2d 481], the court upheld an ordinance prohibiting a landowner from retaining and utilizing a trailer home on her lot located in the township. The court pointed out that most of the authorities approve the strict limitations on the location and use of house trailers even where there is but a single trailer involved. *People* v. *Lederle,* 206 Misc. 244 [132 N.Y.S.2d 693], held that under an ordinance restricting occupancy to one-family dwellings, a trailer may not be put on the premises of the property owner and used for living purposes. *Corning* v. *Town of Ontario,* 204 Misc. 38 [121 N.Y.S.2d 288], and *People* v. *Clute,* 47 Misc.2d 1005 [2] [263 N.Y.S.2d 826], are to the same effect. In *Craver* v.

---

[2] In the *Clute* case, a trailer on wheels was driven onto the defendant's land and placed on a foundation after denial of a permit for temporary construction in order to provide a temporary place to live for a relative who had been burned out. The court held that the permit was properly denied pursuant to an ordinance that required that trailers could only be parked in designated trailer parks. The court said at page 830: "In view of sewage, water supply, waste disposal and other problems connected with the maintenance of trailers, permitting them in trailer parks where these public services can be strictly supervised indeed bears a relationship to the public health and welfare. Permitting an individual trailer on a farm likewise bears a reasonable relation to the public health and welfare in view of the isolated nature of a single trailer on a farm and the

*Zoning Board of Adjustment* (1966) 267 N.C. 40 [147 S.E.2d 599], the court upheld the denial by a zoning board of a permit to the petitioners who had parked a mobile home on the same lot with their home in a rural area, hooked it up to their water pump and septic tank, and used it as the temporary living quarters for the retired members of the family who spent most of their time elsewhere. In *Livingston Tp* v. *Marchev* (1964) 85 N.J.Super. 428 [205 A.2d 65], the court upheld a municipal zoning ordinance prohibiting the parking of trailers within the municipality except in trailer camps and prohibiting the defendants from parking their camp trailer behind their dwelling without enclosing it in a building, as required by another ordinance.

While the above cases relate to the regulation or prohibition of the use of single trailers in residential or rural districts, their reasoning, based on public health and safety considerations, can be applied to uphold the regulation of a bus used for restaurant purposes in commercially zoned areas. If anything, the case for the municipal regulation of the restaurant bus, with its attendant implied invitation to the public to enter and use the eating facilities, is even more convincing. In addition to the obvious health and safety hazards, there are other considerations that a municipality may take into account in regulating businesses.

Clearly, we are here concerned with the regulation of a business establishment. The bus, though originally equipped to be used for locomotion, is now being used by plaintiff as a restaurant. Wheels are attached which might be, *but are not now being* used to move the bus from place to place. The law must concern itself with realities, not illusions. Plaintiff is no transit-traveler momentarily parking his bus restaurant within the City. We hold that a structure, even if attached to transportable wheels, cannot be placed *for a protracted or indefinite period of time* upon a plot of ground and used for restaurant purposes without compliance with the pertinent provisions of the City's ordinances enacted to preserve the health, well-being and safety of all its citizens.

The City, in addition to the right to adopt proper laws regulating business establishments to safeguard the well-being, health and safety of its citizens, may also enact reasonable rules, laws and regulations involving the use of its

lack of likelihood that sewage from the trailer will contaminate the water supply of the general area. In these places, land values of the surrounding area are unaffected. In a residential district, a trailer tends to lower land values.''

land. Two of the basic concepts of sound zoning, the determination of the most appropriate use of land and the conservation of property values, may be undermined by the indiscriminate location of commercial establishments in converted buses. The maintenance and use of plaintiff's bus in a particular location could well have a tendency to stifle the development of an entire area for certain other more desirable commercial purposes. In *Berman* v. *Parker,* 348 U.S. 26, the U.S. Supreme Court said at page 33 [99 L.Ed. 27, 38, 75 S.Ct. 98] : "The concept of the public welfare is broad and inclusive. . . . The values it represents are spiritual . . . as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled."

The fact that we are dealing with a solitary bus connected by utilities to plaintiff's own dwelling does not make the City's ordinance inapplicable as a proper regulation of land use. In the *Livingston* case, *supra,* the property owners conceded that the city could, by ordinance, require trailers used as residences to be parked only in trailer camps but argued that such ordinances were unconstitutional when applied to their camper-trailer merely parked or stored behind their home. The court held that the ordinance was authorized within the police power to enact regulatory ordinances for the protection and preservation of property values affecting the general welfare of the community. The court further pointed out that current authorities recognize neighborhood aesthetics to be integrally bound to property values and to be relevant considerations in zoning when they bear in a substantial way on land utilization. This principle has been recognized in this state (*County of Santa Barbara* v. *Purcell, Inc.,* 251 Cal.App. 2d 169 at p. 173 [59 Cal.Rptr. 345] ; *Metromedia, Inc.* v. *City of Pasadena,* 216 Cal.App.2d 270 [30 Cal.Rptr. 731] ).

The ordinance under review is aimed at preventing not only unsafe or dangerous uses of property but also the untidy appearance and dimunition of property values that may attend the unregulated parking and use of old vehicles as commercial establishments in commercially zoned areas. The reasonableness of the ordinance is established by the provision which does nothing more than require a use permit. Plaintiff was not deprived of the right to own his bus or to use it as a restaurant on his premises. He was merely restricted from indulging in the use in such a manner as might have an

undesirable effect on the health and welfare of the community or impinge upon the property rights of others. The refusal of the City to allow the isolated and interspersed maintenance of temporary businesses or portable vending establishments on individual lots in a commercial district without the required permit is not an arbitrary and unreasonable exercise of the police power and Ordinance No. 455 bears a reasonable relationship to the proper purposes of zoning.

■ Plaintiff attacks the constitutionality of the ordinance on the ground that it is vague and uncertain and fails to fix sufficient standards. We are not here concerned with the necessity of setting out guidelines for the enforcement of an ordinance by administrative officials. The city council itself makes the ultimate determination on the granting or denial of land use permits. In an analogous situation, the regulation of trailer camps by an ordinance requiring that permits be obtained from the Village Board of Trustees, was held to concern the exercise of a purely legislative function relating to the public welfare, not requiring the formulation of general standards (*Village of Harriman* v. *Kabinoff,* 40 Misc.2d 387 [243 N.Y.S.2d 210, 213]).

The general standards to be considered by the city planning commission before recommending the approval of a land use permit to the city council are sufficiently indicated in section 5.23(a) of the San Pablo City Ordinance No. 47,[3] which requires a finding that the establishment in question is not "detrimental to the health, safety, peace, morals, comfort and general welfare of persons residing or working in the neighborhood of such proposed use or be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the city." In *Southern Pac. Co.* v. *City of Los Angeles,* 242 Cal.App.2d 38 [51 Cal.Rptr. 197], an ordinance requiring landowners petitioning for building permits to make certain property dedications for street purposes, called for an awareness by administrative officials of the "practical difficulties" and the avoidance of " 'unnecessary hardship' in the consideration of a variance." (P. 51.) The court there held that the authority vested in the planning commission was not " 'uncontrolled and unguided discretion, even though it may call for the exercise of "judgment of a high order." ' " (P. 51.)

We conclude that the ordinance in the instant case is not

---

[3] Of which we may take judicial notice (Evid. Code, § 452, subd. (b)).

unconstitutional for a lack of sufficiently defined guidelines or standards of enforcement.

We now turn to plaintiff's contention that the ordinance was not validly applied to his use of the bus. He argues that the evidence does not support the trial court's conclusion that he violated the building codes. Plaintiff admitted that he made the utility connections without a permit and offered no evidence to controvert the testimony of the building inspector as to his noncompliance. But he argues the building codes are not relevant since they apply to buildings and not to mobile buses.

While it is true that the building inspector testified on cross-examination that the bus could not be considered a building, there was ample evidence in the record to support the court's conclusion that the bus, as used, was subject to the building codes. The bus, though capable of mobility, is not now being used for a purpose associated with locomotion. It is mobile in that it has the potential to be propelled on wheels, but presently it has a stationary or permanent aspect and is being used like a building. It is enclosed by a fence and, most importantly, affixed by electrical and plumbing connections to plaintiff's home. Plaintiff had used the bus as a restaurant at this location for more than 30 days prior to the effective date of the ordinance and more than 6 months afterwards. What had been built for a bus, movable from place to place, was now at rest and was being used as a restaurant just as though it had been a ready-cut or knocked-down building transported to plaintiff's property. Once adapted to such a use, any characteristics the bus might otherwise have as a mobile transportation unit are, at least temporarily, suspended even though the wheels are left on and the tires remain inflated (*Town of Huntington* v. *Transon* (1964) 43 Misc.2d 912 [252 N.Y.S.2d 576 at p. 579]).[4]

We think that the adaptation of the bus as a restaurant under the circumstances of this case reasonably justifies the

---

[4]It has been held that a hydroaeroplane when flying through the air is not a vessel subject to admiralty but when floating upon navigable waters it becomes a vessel subject to such jurisdiction (*Reinhardt* v. *Newport Flying Service Corp.*, 232 N.Y. 115 [133 N.E. 371, 18 A.L.R. 1324]). The courts of this state have recognized that a popcorn stand on wheels was a building for purposes of the burglary statutes (*People* v. *Burley*, 26 Cal.App.2d 213 [79 P.2d 148]). A house trailer occupied as living quarters and resting on jacks is a building within the provisions of an accident insurance policy providing for double indemnity to one injured by the collapse of the walls or burning of the building (*Aetna Life Ins. Co.* v. *Aird* (5th Cir.) 108 F.2d 136 [125 A.L.R. 1436]).

trial judge's finding that plaintiff's use constituted a mobile, portable vending establishment subject to the City's building codes.

▇ Plaintiff next argues that the ordinance cannot constitutionally be retrospectively applied to him. This contention is without merit. The ex post facto clauses of both the state and federal Constitutions apply only to criminal statutes punishing conduct committed prior to their enactment (*In re Griffin,* 63 Cal.2d 757 [48 Cal.Rptr. 183, 408 P.2d 959] ; *In re Daup,* 63 Cal.2d 754 [48 Cal.Rptr. 181, 408 P.2d 957] ; *People* v. *Stanley,* 33 Cal.App. 624 [166 P. 596] ). The ordinance here in question is a zoning law regulating temporary businesses or temporary mobile vending establishments that by the very length of their operation acquire aspects of permanence. As indicated previously, the constitutionality of the ordinance is presumed and can be properly interpreted to apply retrospectively in the instant case. Neither the federal Constitution nor that of California prohibits retrospective legislation as such (*Southern Cal. Edison Co.* v. *Johnson,* 55 Cal.App.2d 638, 645 [131 P.2d 43] ). The state's inherent sovereign power includes the right to interfere with vested rights whenever reasonably necessary to the protection of the health, safety, morals and well-being of the people (*Addison* v. *Addison,* 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897] ). A zoning ordinance will not be defeated by even a vested interest providing that the ordinance is not unreasonable (*Southern Pac. Co.* v. *City of Los Angeles,* 242 Cal.App.2d 38 [51 Cal.Rptr. 197] ; *Consolidated Rock Products Co.* v. *City of Los Angeles, supra,* pp. 531, 533).

Statutes and other enactments should not be given a retroactive application unless the legislative intent to do so is clearly apparent (*Tevis* v. *City & County of San Francisco,* 43 Cal.2d 190, 195 [272 P.2d 757] ). However, by its express terms, Ordinance No. 455 was made expressly retroactive with respect to any mobile, portable or temporary vending establishment not constructed in accordance with the building codes.

▇ Finally, there is no merit to plaintiff's contention that the ordinance, even if valid, was not applicable to his asserted nonconforming use existing before its enactment. The burden of proof is on the party asserting a right to a nonconforming use to establish *the lawful* and continuing existence of the use at the time of the enactment of the ordinance (*Vogl* v. *City of Baltimore* (1962) 228 Md. 283 [179

A.2d 693]). Here, the City stipulated to the existence of plaintiff's use for 30 days prior to the zoning ordinance, but plaintiff's use was not lawfully established. From the beginning, it operated in violation of the City's building codes and continued in violation thereof after the zoning ordinance was enacted. Thus, plaintiff is not entitled to the benefit of the doctrine of pre-existing nonconforming use (*Mang* v. *County of Santa Barbara*, 182 Cal.App.2d 93, 100 [5 Cal.Rptr. 724]; *Town of Perinton* v. *Mazeka* (1955) 141 N.Y.S.2d 607). He cannot rely on *McCaslin* v. *City of Monterey Park*, 163 Cal. App.2d 339 [329 P.2d 522], and similar authorities, where the lawfulness of the use was not in question.

We conclude that plaintiff has failed to meet his heavy burden of proof and the trial court correctly held that Ordinance No. 455 was constitutional and was properly applied to plaintiff's use of his property. The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.