[Civ. No. 34103. First Dist., Div. Four. Sept. 5, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER C. GATES et al., Defendants and Appellants.

**COUNSEL**

Berns & Steinberg and Ralph J. Steinberg for Defendants and Appellants.

Howard E. Gawthrop, County Counsel, and Dwight L. Herr, Assistant County Counsel, for Plaintiff and Respondent.

**OPINION**

**CALDECOTT, P. J.**—This cause was originally decided by this court on June 13, 1974. On August 7, 1974, the California Supreme Court granted appellants' petition for hearing and transferred the cause to this court for reconsideration in the light of *Strumsky* v. *San Diego County Employees Retirement Assn.*, 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], as modified. As will hereinafter appear, this court, after careful consideration, is of the opinion that *Strumsky* is not applicable to the case at bar.

*Ordinance No. 13.04.340 Does Not*
*Violate the Due Process Clause*

The Santa Cruz County Ordinance No. 13.04.340 provides in pertinent part: "A non-conforming use may be ordered to be terminated by order of

the Board of Supervisors upon recommendation of the Planning Commission within a period to be specified in such order which order shall be issued only after a public hearing by the Planning Commission after fifteen (15) days written notice to such non-conforming user. If the non-conforming user has not made a substantial investment, or the investment can be substantially utilized or recovered through a then permitted use, such order may require complete termination of the non-conforming use within a one (1) year minimum after the date of the order. In making such recommendation, the Planning Commission shall consider the total cost of property and improvements, the length of time, the adaptability of the land and improvements to a then permitted use, the cost of moving and reestablishing the use elsewhere and other related factors. Where the non-conforming use involved the removal of natural products, the amount or percentage of depletion shall be deducted from the cost of investment, and the current need for the product and its availability elsewhere shall be considered."

Relying on 1 Antieau, Municipal Corporation Law (1973) page 259, appellants assert that the ordinance cited above violates due process of law because the terms relating to its standards are impermissibly vague, uncertain, and indefinite.

Professor Antieau states that: "An ordinance which forbids an act in terms so vague that men of common intelligence and understanding must guess as to its meaning and differ as to its application violates the first essential of due process of law. [Citations.]" (*Supra,* at p. 259.)

There is some California authority for the proposition that a zoning ordinance may be too vague to be enforced. (See *People* v. *Binzley,* 146 Cal. App.2d Supp. 889, 891 [303 P.2d 903]; see also *Melton* v. *City of San Pablo,* 252 Cal.App.2d 794, 802 [61 Cal.Rptr. 29]; *Case* v. *City of Los Angeles,* 218 Cal.App.2d 36, 43 [32 Cal.Rptr. 271]; *Fletcher* v. *Porter,* 203 Cal. App.2d 313, 325 [21 Cal.Rptr. 452].) However, in California, the most general zoning standards are usually deemed sufficient. "The standard is sufficient if the administrative body is required to make its decision in accord with the general health, safety, and welfare standard." (Cal. Zoning Practice (Cont. Ed. Bar) p. 147.) This rule also applies to an ordinance regulating nonconforming use. "California courts permit vague standards because they are sensitive to the need of government in large urban areas to delegate broad discretionary power to administrative bodies if the community's zoning business is to be done without paralyzing the legislative process." (Cal. Zoning Practice (Cont. Ed. Bar) *supra,* at p. 148.) In the case

at bar, we are dealing with a rather specific ordinance involving noncon-forming uses.

Appellants center their attack on ordinance No. 13.04.340 on two of the factors that the commission must consider when making its recommenda-tion—"the length of time" and "other related factors."

■ Appellants contend that the words "length of time" are susceptible of several meanings. Appellants' argument is without merit. Ordinance No. 13.04.340 directly provides that once the planning commission decides that a nonconforming use should be terminated, it must make a recommenda-tion to the board of supervisors. In this recommendation the planning com-mission must consider five points, one of which is time, a time of at least one year. Read in such a way it is clear that the time period relevant to a recommendation of termination is susceptible of only one meaning—the time it will take for the nonconforming user to terminate his nonconforming use. A statement by the planning commission's legal advisor at the planning commission meeting of January 27, 1971, substantiates this interpretation of ordinance No. 13.04.340.

■ Appellants also argue that the term "other related factors" is even more vague and indefinite. The phrase "such other factors," analyzed in the context of the ordinance is not vague or indefinite. "Where general words follow the enumeration of particular classes of persons or things, the gen-eral words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." (45 Cal.Jur.2d, Statutes, § 145, p. 651.)

■ Finally, appellants argue that the ordinance fails to provide any guidance regarding the relative weight or importance to be given to each of the five factors listed in determining whether or not a "substantial" invest-ment exists. To assign a relative weight to each factor would defeat the dis-cretionary nature of the commission's recommendation. On the contrary, such factors must be applied individually to each case since certain of the factors may be completely irrelevant in some cases and crucial in others.

### Board of Supervisors Order Terminating
### Appellants' Nonconforming Use

■ The trial court below concluded that the appellants were proce-durally barred pursuant to Government Code section 65907 from raising the defense of the invalidity or unreasonableness of the order of the board of supervisors terminating appellants' nonconforming use of their property. The trial court is in error.

Government Code section 65907 provides: "Any action or proceeding to attack, review, set aside, void or annul any decision of matters listed in Sections 65901[1] and 65903,[2] or concerning any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced within 180 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations. Any such proceeding shall take precedence over all matters of the calendar of the court, criminal, probate, eminent domain and forcible entry and unlawful detainer proceedings excepted."

Appellants did not attack the May 11, 1971 order of the board of supervisors terminating their nonconforming use nor the planning commission decision until the abatement period had elapsed and until this action was filed below. Appellants do not contest the fact that they failed to commence an action or failed to present a defense of invalidity of the board of supervisors' action within 180 days. Rather, appellants contend that section 65907 is inapplicable to the defenses raised in this case. They argue that "[t]he 6 month statute of limitations for 'any action or proceeding to attack, review, set aside, void or annul any decision of matters listed in Sections 65901 and 65903' does not apply to all zoning matters but only to applications for variances, conditional use permits or other permits, their revocation or modification and appeals therefrom." Appellants' contention is correct though their reasoning is erroneous.

To ascertain the scope of section 65907, we must consider sections 65901 and 65903. The statute of limitations provided for in section 65907 applies to matters listed in section 65901 and section 65903.

---

[1]Section 65901 provides: "The board of zoning adjustment or zoning administrator shall hear and decide applications for conditional uses or other permits when the zoning ordinance provides therefor and establishes criteria for determining such matters, and applications for variances from the terms of the zoning ordinance. Said board or said zoning administrator may also exercise such other powers as may be granted by local ordinance, and adopt all rules and procedures necessary or convenient for the conduct of its or his business."

[2]Section 65903 provides: "A board of appeals, if one has been created and established by local ordinance, shall hear and determine appeals from the decisions of the board of zoning adjustment or the zoning administrator, as the case may be. Procedures for such appeals shall be as provided by local ordinance. Such board may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision, or determination as should be made, and such action shall be final."

Section 65901 does not apply to the order of the Santa Cruz County Board of Supervisors terminating appellants' nonconforming use. Section 65901 only concerns hearings and decisions of a board of zoning adjustment or of the zoning administrator. Appellants are not attacking the decision of the planning commission, rather they are attacking the decision or order of the legislative body of Santa Cruz County.

Section 65903 does not apply to the order of the Santa Cruz County Board of Supervisors. The board of supervisors when dealing with a recommendation of the planning commission, is not specifically nor impliedly acting as an appellate board. Ordinance No. 13.04.350 specifically provides that where the planning commission makes a determination in the form of a recommendation or report addressed to the board of supervisors, no appeal may be taken by the interested party.

This recommendation is neither an "order" nor a "requirement," nor a "decision" nor a "determination" by the planning commission. Rather it is merely a recommendation that the legislative body act. This recommendation is not final and is subject to a de novo proceeding before the legislative body. Thus, in no way, can the matter before the planning commission be called an appeal.

Sections 65901 and 65903 are the exclusive determining factors which define the actions that are limited to attack within a specific time period as set forth in section 65907. Since neither sections encompass the situation set up by the legislative body of Santa Cruz County, appellants attack on the board of supervisors' order is not barred by section 65907.

### The Board of Supervisors May Modify the
### Recommendation of the Planning Commission

■ Appellants assert that the board of supervisors is powerless to modify the "recommendation" of the planning commission pursuant to ordinance No. 13.04.340 of the county code.

The ordinance provides in relevant part: "A non-conforming use may be *ordered* to be terminated by order of the Board of Supervisors upon recommendation of the Planning Commission *within a period to be specified in such order* which order shall be issued only after a public hearing by the Planning Commission after fifteen (15) days written notice to such non-conforming user." (Italics added.)

Appellants contend that "[t]here is no language in the ordinance what-

soever which empowers the Board of Supervisors to either alter or modify the recommended order of the Planning Commission. . . ."

Appellants' contention is without merit. Ordinance No. 13.04.340 provides that a nonconforming use may be ordered terminated by *order* of the board of supervisors *within a period to be specified in such order*. Impliedly this means that it is the board and not the commission which is to set the amortization period. The commission only recommends a period of time in which the user is to terminate his or her use.

The word "recommendation" in its common usage refers to an action which is advisory in nature rather than one having any binding effect. (See Webster's Third New Internat. Dict.)

Ordinance No. 13.04.350 lends support for the conclusion that the commission recommendation is not final but is subject to modification. The ordinance provides that where the commission makes the recommendation to the board the interested party has no right to appeal. Subsumed in such a restriction is that the commission's recommendation is in no way final.

### The Board of Supervisors' Order Terminating Appellants' Nonconforming Use Was Unconditional

Appellants assert that the board of supervisors' order of termination was conditioned upon the planning department's making of a "determination in conjunction with the solid waste study as to the development of an area where the Gates' auto wrecking yard could be relocated within the County. . . ." They argue that since such a determination has not been made the condition precedent to abatement was not fulfilled and thus the appellants do not have the duty to remove themselves from their present location. Appellants' argument has no merit.

A careful reading of the record of the board of supervisors meeting indicates that the resolution of the board terminating the appellants' nonconforming use and the resolution directing the planning department to make a study were separate and not conditioned on one another. There is no language of condition in the transcript nor any evidence from which one could infer such a condition.

### Supervisor Sanson Was Not Disqualified From Voting at the Board of Supervisors Hearing of May 11, 1971

At the board meeting of April 13, 1971, Supervisor Sanson indicated that he was not going to participate in the matter concerning the

Buena Vista Auto Wreckers because he had at one time represented Mr. and Mrs. Gates in a similar abatement proceeding by the county. The hearing was then continued until May 11, 1971.

At the May 11, 1971 meeting, Supervisor Sanson decided to participate in the hearing after being assured by county counsel that he did not have a legal conflict of interest by reason of having previously represented Mr. and Mrs. Gates.

The order of the board of supervisors terminating the nonconforming use of the appellants' business was adopted by a split board on a 3-2 vote. Mr. Sanson voted with the majority.

Relying on contract principles, appellants now contend that Supervisor Sanson waived his right to participate in the proceeding.[3]

Contract principles of waiver are inappropriate in the case at bar.[4] The applicable principles as to actions such as are here involved is stated in 4 McQuillin, Municipal Corporations (3d ed. 1968) Reconsideration, section 13.48, pages 565-566, as follows: "Unless restrained by charter or statute applicable, the legislative body of a municipal corporation, like all deliberative bodies, possesses the undoubted right to vote and reconsider its vote upon measures before it, at its own pleasure, and to do and undo, consider and reconsider, as often as it may think proper, until by final vote or act, accepted as such by the body, a conclusion is reached." (Cf. *DeWitt* v. *Board of Supervisors,* 53 Cal.2d 419, 424 [2 Cal.Rptr. 1, 348 P.2d 567]; *Guy F. Atkinson Co.* v. *Offner,* 86 Cal.App.2d 92 [194 P.2d 33].)

The principle above applies to the situation involved here. Sanson's act was not final and was subject to reconsideration. For example, in *DeWitt* the county board of supervisors at its regular meeting directed that the determination that a change of boundaries of school districts should be decided by an election of the members. The following day, in an adjourned session of the previous day's meeting, the board rescinded its order of the prior day and ordered that a hearing be held instead. Citing an earlier edition of McQuillin, the court affirmed the board's action.

---

[3]Appellants do *not* assert that Supervisor Sanson was barred from voting because of a conflict of interest.

[4]Appellants cite no authority for the proposition that a public official waives his right to future participation on a matter if he declines to initially participate at a meeting when the only action taken was a continuance of this matter.

*Appellants Were Not Denied Procedural Due Process During
the Hearing Culminating in the Termination
of Their Nonconforming Use*

Appellants submit that they were deprived of due process at the board of supervisors hearing because (1) the county did not present any competent sworn testimony at the hearing; (2) appellants were not afforded the right to cross-examine witnesses; (3) the county shifted the burden of proof on establishing the cost of the investment and a reasonable basis for the amortization period to the defendants.

Appellants' contention is without merit.

Appellants argue that *Leppo* v. *City of Petaluma,* 20 Cal.App.3d 711 [97 Cal.Rptr. 840] and the cases cited therein, stand for the proposition that an agency decision must be based upon competent sworn testimony; the property owner has the right to cross-examine; and the county bears the burden of proof.

In *Leppo,* the Petaluma City Council, in a quasi-judicial decision, determined that respondent's building was a public nuisance and ordered an abatement of that nuisance. The Court of Appeal stated that "[t]he official duty of the city in a case in which they seek to abate a nuisance is to afford the property owner a due process hearing . . . ." (*Supra,* at p. 717.) The city council's decision directly affected the owner's property rights.

Here, the board of supervisors' order in effect declared appellants' nonconforming use a nuisance. "A failure to comply with an order of termination by the Board of Supervisors shall constitute such non-conforming use a public nuisance subject to abatement by the District Attorney." (Santa Cruz County Ordinance No. 13.04.340.)

Though the board's decision here differs from the city council's decision in *Leppo* in that the board did not attempt to abate appellants' nonconforming use, the due process principles established in *Leppo* should apply to the determination that appellants nonconforming use must be terminated within a year and a half. " 'Although it is elementary that an owner of property has no constitutional right to maintain it as a public nuisance, it is equally elementary that he has a clear constitutional right to have it determined by due process whether in fact and law it is such a nuisance.' " (*Leppo, supra,* at p. 717.)

The board's decision to terminate appellants' use was in effect a finding of nuisance. It matters not that the abatement of appellants' nuisance was the subject of the court trial appellants are now appealing from. The trial court pointed out to the parties that they could not retry or reestablish evi-

dence presented either to the planning commission or to the board of supervisors. As the court pointed out, its function was very limited on the issue of evidence.

It is clear then that appellants had a right to due process at some point in the proceedings below. As stated in *Leppo, supra,* at page 718, "It is clear that the respondents were not afforded a due process hearing either in the form of a judicial determination or a hearing before an administrative body in which respondents had the opportunity to present evidence and cross-examine the city's witnesses." In the present case the ordinance required that the board of supervisors could act upon a recommendation of the planning commission and that the planning commission could make a recommendation only after a public hearing held after 15 days' written notice to the non-conforming user.

The planning commission constituted the administrative body in which the property owner (appellants) would receive the due process hearing. This procedure was followed: the hearing was held, appellants were represented by counsel and witnesses (both on behalf of appellants and opposed to appellants) were called and testified. Thus appellants were granted a due process hearing before an administrative body as provided in *Leppo, supra.*

In addition, appellants are now procedurally barred from presenting a defense of insufficiency or invalidity of any decision by the commission, pursuant to Government Code sections 65907 and 65901. Appellants failed to bring an action or proceeding "to attack, review, set aside, void or annul" the planning commission's decision involving powers granted by local ordinance.

*Ordinance No. 13.04.340 Was Not Misinterpreted and Was Not*
*Improperly Applied by the Planning Commission*
*and the Board of Supervisors*

■ Appellants' construction of the ordinance is as follows: A nonconforming use can only be ordered terminated by the board of supervisors if the nonconforming user has not made a substantial investment, or the investment can be substantially utilized or recovered through a then permitted use. In order for the planning commission to recommend termination, it must determine that the non-conforming user has not made a substantial investment, etc. They must consider (1) the total cost of property and improvements; (2) the length of time the user has used the land or the length of time in which he can recover his investment; (3) the adaptability of the land and improvements to a then permitted use; (4) the cost of moving and

reestablishing the use elsewhere and (5) other related factors, when making their determination that the user has not made a substantial investment.

The ordinance clearly does not conform to appellants' self-serving interpretation. The statute reads as follows: (1) "A nonconforming use may be ordered terminated by order of the Board of Supervisors upon recommendation of the Planning Commission within a period to be specified in such order . . . ." (2) Such order by the board of supervisors may require the user to terminate his use *within a minimum of one year* after the date of the order if the nonconforming user has not made a substantial investment, etc. (3) When the planning commission makes a recommendation of termination to the board of supervisors it must consider certain factors such as the total cost of property and improvements, the period of amortization, etc. Key to the amortization period is a reasonable time for the user to recover his investment.

Appellants contend that under the ordinance the county has the burden of establishing that appellants had "not made a substantial investment, or that the investment can be substantially utilized, or recovered through a then permitted use."

As discussed above, the county must establish lack of substantial investment or substantial utilization or recovery if and only if the order of the board requires complete termination of the nonconforming use within a one-year minimum after the date of the order. The board of supervisors ordered appellants to terminate their use within a period of more than a year and a half. (May 11, 1971—December 31, 1972.)

The planning commission complied substantially with the requirement that in making a recommendation of termination, it must consider certain specific factors.

### The Amortization Period Granted for the Termination of Appellants' Auto Wrecking Yard Is Reasonable

Appellants contend that the 18-month amortization period granted for appellants termination of their nonconforming use is completely unreasonable and is not supported by substantial evidence.

In *City of Los Angeles* v. *Gage*, 127 Cal.App.2d 442 [274 P.2d 34], one of the early and still leading cases sanctioning amortization of nonconforming uses, a city ordinance that a plumbing business must cease operation in a residential zone within five years after a rezoning, was upheld. The court stated a zoning ordinance may not operate to immediately suppress or re-

move from a particular district a nonconforming use, but a nonconforming use may be terminated within a reasonable time.

In determining that a five-year period as applied to Gage's property was reasonable the court considered (1) the extent of the restriction; (2) the cost of moving; (3) the time in which he had notice of his nonconforming use; (4) the extent of the owner's nonconformity.

The court in *Gage* cited with approval two decisions from other jurisdictions which had upheld short termination periods for nonconforming uses. *State* ex rel. *Dema Realty Co.* v. *McDonald,* 168 La. 172 [121 So. 613], involved an ordinance requiring all businesses in a residential district to terminate within a year. *Standard Oil Co.* v. *City of Tallahassee* (5th Cir.) 183 F.2d 410, involved an ordinance allowing service stations only nine months in which to terminate nonconforming uses in residential districts.

There are apparently no reported California appellate decisions which have upheld as reasonable or declared as unreasonable, the termination of nonconforming auto wrecking yard operations. Respondent cites a number of cases in other jurisdictions upholding short termination periods for wrecking yards.

Appellants cite California cases where the appellate court sustained challenges to amortization statutes determining that the time provided the owner to cease operations was unreasonable. These cases are readily distinguishable from the case at bar.

One who attacks a zoning ordinance or a zoning decision as unreasonable bears the burden of establishing this claim. (*National Advertising Co.* v. *County of Monterey,* 211 Cal.App.2d 375, 381 [27 Cal.Rptr. 136].) Appellants have offered *no* evidence whatsoever which would tend to show that the amortization period of 18 months is in any way unreasonable.

(1) Appellants had no investments in any permanent improvements on the subject parcel.

The fence on the property was installed by appellants after the January 27, 1971 hearing of the planning commission. Furthermore, appellants were advised prior to constructing the fence that the cost of the fence could not be considered in establishing the amortization period.

The $2,823.50 for grading was also performed after the January 27, 1971 hearing of the planning commission; it included bulldozer work required to

remove a car body retaining wall which had been illegally installed without a permit.

Mr. Gates testified at the trial that the $1,800 spent for the two-year remaining lease was the monthly rental of $75.00 for two years. The cost is an operating expense.

The attorney's fees, cost of gravel, upkeep and improvements to the road, telephone installation and advertising are primarily operating expenses.

Appellants failed to present any evidence which indicates that they could not recover their investment in land by using or selling it for uses permitted in the R-A zone.

The only other investment on the property is a house trailer, illegal under ordinance No. 13.12.110 of the Santa Cruz Code.

(2) Appellants failed to present any evidence of the cost involved in moving their operation. However, as respondent indicates, appellants' attorney represented that appellants only had 75 cars on one parcel and 40-45 on the remainder. There would be no moving costs.

(3) The evidence indicates that appellants could have moved the operation of their business within 18 months. Appellants' attorney represented at the planning commission hearing that appellants processed 950 cars in 1970.

(4) Appellants have had adequate time in which to make plans to move their business. Their nonconforming use has existed since 1964.

(5) There was substantial, though not overwhelming evidence that there is adequate unused land, favorably zoned, in the county, where appellants could relocate their business. It would take about four months to obtain a use permit.

### The Strumsky Decision Is Not Applicable
### to This Case

In *Strumsky* v. *San Diego County Employees Retirement Assn.*, *supra*, 11 Cal.3d 28, as modified, the Supreme Court considered the scope of judicial review of adjudicatory orders or decisions of administrative agencies of local origin. The court held that: "If the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must

exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in the light of the whole record." (*Id.*, at p. 32.)

The *Strumsky* decision is inapplicable to the case at bar. The *Strumsky* decision and the cases upon which it is based apply to reviews of administrative decision.[5] (See also *Bixby* v. *Pierno,* 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].)

The case at bar does not involve a review of an administrative decision. Rather, it involves an original action by the County of Santa Cruz to enjoin and abate a public nuisance. The action to enjoin a public nuisance was brought pursuant to the principle that a municipal corporation has the right to seek enforcement of its zoning ordinance by a suit for an injunction. (*City of Fontana* v. *Atkinson,* 212 Cal.App.2d 499, 508 [28 Cal.Rptr. 25]; *City of San Mateo* v. *Hardy,* 64 Cal.App.2d 794, 797 [149 P.2d 307].)

The action to abate a public nuisance was brought pursuant to section 13.04.340 of the Santa Cruz County Code which provides that failure to comply with an order of the board of supervisors to terminate a non-conforming use is a public nuisance. Both these actions were original actions brought by the county to enforce an administrative decision. That the board of supervisors' findings were not supported by the evidence was never in issue.

■ That *Strumsky* is not applicable to this case does not mean that the lower court did not err in its review of the evidence before the board of supervisors and the planning commission. The trial court, in its "findings of facts and conclusions of law" found that the reasonableness of the amortization period provided by the board of supervisors was supported by substantial evidence, and made a conclusion of law to the same effect. The causes of action before the trial court were original actions independent of the administrative decision. The substantial evidence rule is a function of review, inapplicable in an original action before the superior court.

The court's error does not constitute reversible error. The sole evidentiary question before the court concerned the reasonableness of the amor-

[5]This court is aware of *Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) *ante,* page 163 [116 Cal.Rptr. 160], certified for publication, where the court stated that *Strumsky* applied to all reviews of administrative decisions, regardless of how they happen to reach the judicial system.

tization period granted by the board of supervisors. This court reviewed the evidence in its entirety and concluded that the amortization period was not unreasonable. As this court stated in its decision "[a]ppellants offered no evidence whatsoever which would tend to show that the amortization period of 18 months is in any way unreasonable."

Furthermore, the lower court permitted appellants to introduce evidence regarding the unreasonableness of the amortization period (the only evidentiary question before the court below). In fact the major part of the evidence introduced below related to the unreasonableness of the amortization period. The sole evidence pertaining to the unreasonableness of the period was Mr. Gates' testimony that there was no other site in Santa Cruz as convenient, as practical, and as inexpensive as that presently occupied by appellants. This fact was never in conflict and in fact, respondent's attorney stipulated to its existence.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 30, 1974.