[Civ. No. 20052.   First Dist., Div. Three.   June 24, 1963.]

GEORGE W. WILLIAMS et al., Plaintiffs and Respondents, v. CITY OF SAN BRUNO et al., Defendants and Appellants.

Joseph A. Galligan and Richard G. Logan for Defendants and Appellants.

Carr, McClellan, Ingersoll & Thompson, Luther M. Carr, Robert R. Thompson and David C. Carr for Plaintiffs and Respondents.

DEVINE, J.—City of San Bruno and certain of its officers appeal from a judgment which (1) declares Ordinance No. 822, passed in pursuance of a master plan which zones all of the land within the city, to be invalid, void and of no effect insofar as it applies to the westerly 77 acres of plaintiffs' property; (2) declares that earlier zoning ordinances are in full force and effect; (3) enjoins the city and its officers, employees and agents from enforcing the ordinance against the 77 acres; and (4) perpetually enjoins and re-

strains the city from rezoning the 77 acres to administrative-research or light industrial use.

The judgment is based on findings and conclusions of law which, save the formal and undisputed ones about ownership of the property, existence of the municipal corporation, and the like, may be summarized thus: (1) The city council of San Bruno did not follow the procedure that is required by section 65653 of the Government Code of the State of California, and the ordinance is therefore void and of no effect. (2) Earlier ordinances were passed without commission of any error by the city council. (3) There has been no change of circumstances or conditions between the time of the adoption of the earlier ordinances and the time of adoption of the new one that would justify the change in permitted use of plaintiffs' lands. (4) Said lands are unsuitable, by topography, location, size, grade, highway and railroad availability, a pipe line easement and cost of grading, to the only use allowed by the new ordinance. (5) In rezoning the 77 acres, the city council acted in an arbitrary, discriminatory, capricious, confiscatory, unreasonable and unconstitutional manner. (6) The ordinance does not contribute in any measure to the public health, safety, morals or general welfare of the people of the city.

### General Statement of Facts

In 1953, plaintiffs, a group of real estate developers, purchased a tract of land, 142 acres more or less. It may be described, in the most general way, as consisting of (a) fairly level land not far removed, towards the west, from El Camino Real, (b) land ascending westerly along and near San Bruno Avenue to Junipero Serra Boulevard, a highway from San Francisco southerly, a road of middle altitude between El Camino Real and Skyline Boulevard, and (c) land along the easterly border of Junipero Serra Boulevard. The western portion is about 175 feet higher than the eastern. When plaintiffs bought the land, it was zoned R-1, for single family dwellings, and plaintiffs made plans to build residences in 1955 and 1956, but the plans were not carried out. Subsequently, plaintiffs sought rezoning and on April 23, 1958, the land was rezoned as follows: about 20 acres remained R-1, about 67 became R-3, and about 53 became C-½, administrative-professional. Although plaintiffs were not entirely satisfied at that time, because some of them thought the C-½ area was excessive, nevertheless they are wholly agreeable now to

this rezoning, and it is the object of this lawsuit to restore this rezoning.

On March 13, 1958, the city entered into an agreement with the State of California, by the terms of which the state obligated itself to assist the City of San Bruno in the preparation of a comprehensive general plan for physical development. Pursuant to this agreement, the planning consultant firm of Hahn, Wise & Barber was retained by the state to prepare this development plan. After study, the consultant firm recommended a land use plan to appellants. After public hearings, this plan was adopted by the city's planning commission on December 8, 1958, and subsequently by the city council on March 25, 1959. After meetings and a public hearing, the planning commission recommended that the city council implement the master plan by adoption of an ordinance. A public hearing was held before the city council on August 26, 1959. Respondents protested at each stage. The ordinance was passed by the council. By the operation of Ordinance No. 822 all of respondents' land was zoned to administrative and research use.

A-R is similar to the earlier C-½. It allows a wide variety of uses of commercial and light industrial nature, but disallows apartment buildings, which plaintiffs desire to build on the westerly, higher ground.

Essentially, the debate before the planning commission and before the city council went along these lines: The consultant who had been employed by the city, the superintendent of schools of the school district in and about San Bruno, and many citizens of the city, argued that the construction of garden-type apartments would bring about an influx of children of school age, thereby aggravating an already crowded condition of the shools, and that the land in question should be held for A-R use, whereby increase in the school population would be avoided. It was argued also that by confining the use to A-R, a better tax base for the city would be established. The owners, on the other hand, argued that although there is a large and immediate demand for apartments in San Bruno, there is an oversupply of A-R land, both in San Bruno and in San Mateo and Santa Clara Counties generally. The owners also contended that it would be economically impossible to prepare the western part of the land for A-R use for many years, because of its hilly and sloping character. This part of the land, they said, would have to be graded all at one time if exorbitant expense were to be avoided, and

this could not be done until a substantial demand were available for this type of use. The owners argued further that the estimate made by the proponents of the rezoning of the number of school children who would live in the apartments was excessive. They contended also that the tax situation and the economic welfare of the city would be improved by the construction of the apartments.[1]

### ISSUES

The issues as presented by the parties to this appeal are: (1) Is the rezoning ordinance void because of failure to comply with provisions of Government Code section 65653? (2) Is the rezoning ordinance void as being confiscatory? (3) In this case of rezoning (a) is it necessary for the city to show that the prior zoning ordinance was the result of mistake or that changed conditions or circumstances have occurred, and (b) have there been such changed conditions or circumstances (no mistake in enacting the earlier ordinances was asserted)? (4) Is the rezoning which was made of plaintiffs' property to administrative-research use within the police power of the city? Our holding upon the first of these issues makes it unnecessary, and probably improper, to discuss the other three issues, except insofar as reference to them has to do with deciding the first one.

### PLEADINGS, FINDINGS, CONCLUSIONS AND JUDGMENT

In the third cause of action in their complaint, plaintiffs allege that, contrary to the provisions of section 65653 of the Government Code, the planning commission of the City of San Bruno in submitting Ordinance No. 822 to the city council, the legislative body of said city, did not submit a report of findings or summary of hearings, as required by said section; and the pretrial conference order declares noncompliance with the state law in adopting the ordinance to be an issue in the case. The findings of fact made by the trial judge state that "each and all of the allegations set forth in the third cause of action are true and sufficiently established by the evidence." The court found, more specifically, that "in the adoption of ordinance No. 822 the City Council of the City of San Bruno adopted said ordinance without receiving a 'summary of hearings' from the Planning Commission of said City, sum-

---

[1]Some of our information as to the content of the arguments before the city planning commission has come from the excerpts from the meeting of May 11, 1959, which, as shown later, were not presented to all of the members of the city council.

marizing the hearings held before said Commission pertaining to the adoption of ordinance No. 822, as required by Section 65653 of the Government Code of California, and said ordinance is therefor null and void and of no effect."

The court, as one conclusion of law, states that "the plaintiffs are entitled to a judgment and decree against the defendant City declaring ordinance No. 822 of said City to be illegal, improper, unconstitutional, null and void, and of no force or effect with respect to the plaintiffs' lands." (The conclusion that the ordinance is "unconstitutional" flows from considerations relating to the substance of the ordinance, rather than to the manner of its passage.)

The court by its judgment enjoins the enforcement of the new ordinance, and perpetually enjoins the city from rezoning the 77 acres of plaintiffs' land to administrative-research, or light industrial use, as such uses are defined in said ordinance.

### PROCEDURE REQUIRED BY STATE LAW

San Bruno is a general law city, as defined in section 34102 of the Government Code, not a chartered city. As a general law city, it acquires its zoning power solely from statute. The statute which confers this power on the legislative body of the city prescribes the method by which zoning laws are to be adopted or amended, and the method of enactment is the measure of the power to enact. (*Laguna Beach Taxpayers' Assn.* v. *City Council*, 187 Cal.App.2d 412, 415 [9 Cal.Rptr. 775]; *Galvin* v. *Board of Supervisors*, 195 Cal. 686, 696 [235 P. 450]; *Hurst* v. *City of Burlingame*, 207 Cal. 134, 141 [277 P. 308]; *Simpson* v. *Hite*, 36 Cal.2d 125, 134 [222 P.2d 225]; *Johnston* v. *City of Claremont*, 49 Cal.2d 826, 836 [323 P.2d 71].) Section 65653 of the Government Code provides: "A copy of any precise plan, regulation, or amendment recommended pursuant to this article shall be submitted to the legislative body and shall be accompanied by a report of findings, summaries of hearings, and recommendations of the planning commission." The plan which was presented with the recommendation to enact Ordinance No. 822 is denominated a precise plan by the terms of the ordinance itself, and it is not disputed by appellants that the city was obliged to follow the procedure laid down in Government Code section 65653.

### NONCOMPLIANCE WITH SECTION 65653, GOVERNMENT CODE

Respondents contended successfully before the trial court, and reiterate their contention before us, that the city did not

comply with this code section. It will be noted that the section requires four things to be submitted to the legislative body: (1) a copy of any precise plan, regulation or amendment, (2) a report of findings, (3) summaries of hearings and (4) recommendations of the planning commission. Respondents contend that there was failure to submit items 2 and 3, namely, report of findings and summaries of hearings, and, initially, we shall consider these two items separately, although later we must tie together our conclusions on the separate items, because of their cumulative effect.

### Findings of the City Planning Commission

The city contends that there was no finding, among the *court's* findings, of failure of the city planning commission to submit *its* findings to the city council. This contention probably is based upon the fact that there is a specific finding by the court as to the omission of a summary of the hearings, followed by a conclusion of law that the ordinance is therefore null and void. The court's general finding of the truth of all of the allegations of count three includes the failure of the city planning commission to make a report of findings; and at this point, where the question relates to the procedure in passage of the ordinance, we should regard the findings in the usual manner on appeal, that is, with liberality in favor of the judgment. (*Gin S. Chow* v. *City of Santa Barbara,* 217 Cal. 673, 680 [22 P.2d 5].)     If the valid passage of the ordinance were established, we should view its constitutionality with the same sort of liberality, presuming it to have been adopted for the promotion of the public health, safety, morals and general welfare, and sustaining it even if we differed with the zoning authorities as to its necessity or propriety, if there were question upon which reasonable minds might differ. (*McCarthy* v. *City of Manhattan Beach,* 41 Cal. 2d 879, 885-886 [264 P.2d 932].)     This would be so even if the city council, acting within the power delegated to it by the Legislature, were by zoning ordinance to cause very large loss to the property owners. (*Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515 [20 Cal.Rptr. 638, 370 P.2d 342].)     In order to gain the benefit of the presumption of constitutionality of a zoning ordinance, however, the municipal corporation enacting it must comply with the law which, in the case of general law cities, is that established in the Government Code.

We are the more disposed to regard the general finding of

the court that all of the allegations of the third cause of action are true, as including the finding that the planning commission submitted no findings to the city council, because of the absence of dispute at the time of the trial as to the process of enactment of the ordinance, but, in fact, a stipulation between counsel that the only communication from the planning commission to the council which could be relied on as a finding was the commission's resolution. This resolution simply states that the commission "has held two (2) public hearings," that the land use "plan is deemed to be in the public interest," and that the plan is "recommended for adoption by the City Council."

This brings us to the question, does the declaration in the resolution by the planning commission that the rezoning is deemed to be in the public interest, satisfy the statutory requirement that the commission sent a report of findings to the city council? The statute does not define "findings." The purpose of the requirement of findings by the commission is to be ascertained from the functions of that body as they appear from the statute. The whole scheme of planning seems to have been devised by the Legislature upon the proposition that the planning commission would be the investigating, fact finding and recommending agency, and that the legislative body of the municipal corporation would fulfill its traditional role of enacting legislation or consideration of policy, but acting only when possessing the results of the commission's labors. Thus, the council may not initiate and adopt an ordinance establishing a precise plan except by referring it to the planning commission for a report (Gov. Code, § 65657), although failure of the commission to report within 40 days shall be deemed to be approval (Gov. Code, § 65658). The legislative body shall not make a change in any proposed precise plan, regulation or amendment recommended by the planning commission until the proposed change has been referred to the planning commission for a report, and a copy of the report has been filed with the legislative body (Gov. Code, § 65655). In the case of initiating by the commission, the material specified to be presented to the council is report of findings, summaries of hearings and recommendation (Gov. Code, § 65653). We believe this means considerably more than a statement that adoption of the proposed plan is "in the public interest." If this were all that were meant, the Legislature might have said so.

To reduce the requirement to this skeletal frame would deprive it of reasonable function.

Appellants urge that there was substantial compliance, and they rely on the case of *Bailey* v. *County of Los Angeles*, 46 Cal.2d 132 [293 P.2d 449]. The *Bailey* case is quite distinguishable from the one before us. In that case, there had been an omission by the planning commission to send findings to the legislative body, the board of supervisors, but the single question was whether the use of the land for a juvenile hall was necessary for the general public welfare and interest, and since the planning commission did recommend zoning for the juvenile hall, the only finding which could have been made was an affirmative one. In the record there was no showing whatever that appellants offered evidence to challenge the proposition that the juvenile hall was necessary for the public welfare. The Supreme Court affirmed the conclusion of the trial court that there had been substantial compliance (p. 136). ██ ██ In the case before us, there is a good deal of conflicting evidence which should have been resolved by the planning commission in the form of findings. Such findings need not have had the precision which is expected of judicial findings. To infer findings where none exist, however, is to ignore the mandate of the statute. The controversy before the planning commission, and before the city council, involved two questions of substance, and perhaps of novelty: (1) May a city zone against apartments on the basis that children of school age will reside there, for the benefit of the taxpayers of a school district as distinguished from taxpayers of the city itself? (Incidentally, there is nothing in the record to show whether the school district is coterminous with the city.) (2) May a city zone exclusively for uses essentially commercial (administrative-research), and against use for apartment houses, in order to strengthen its tax base, and if so, may the restriction ''freeze'' land for such commercial use, and, again, if so, for what length of time would such ''freezing'' be allowable? Whether the planning commission would have made findings which would be supportive of an affirmative answer to both of these questions, or to one only, and if so, to which, we cannot tell, nor can we tell what factual situation would have been found.

We do not mean to give any implication that the zoning which was done could not be sustained constitutionally, nor do we mean to dictate the extent of the required findings. ██ ██ We do decide that the city planning commission, as

a prerequisite for action by the city council, must make findings on the essential points of the proposed rezoning and report them to the council, and we conclude that the trial judge was correct in deciding that this had not been done.

*Summary of Hearings by City Planning Commission*

■ ■ During all of the discovery and pretrial procedure, it was admitted by the city attorney that there was no summary of hearings, as such, and it was represented by him to plaintiffs' attorney that the only writings which would be relied upon to provide substantial compliance with the requirement of "summaries of hearings" in section 65653 of the Government Code, would be the resolution of the planning commission and the minutes of the two meetings of that commission, those of May 11, 1959, and June 8, 1959. The resolution has been set forth above, and obviously it does not contain a summary of the hearings. Although the minutes contain some of the arguments made and facts presented for and against the rezoning, other parts make but general reference to the discussion and do not give the substance of the facts presented and arguments advanced. The minutes of the May 11, 1959, meeting, so far as they refer to the zoning ordinance, are set forth in the note below.[2] There is no showing that the letters referred to were transmitted to the council, nor that any résumé of their contents was provided. During the trial, the city attorney claimed another item of information as having been provided by the planning commission to the council, and was permitted to offer it in evidence, over the objection of plaintiffs' counsel that this violated his earlier admission. This item is a typewritten transcript of excerpts from the planning commission's meeting of May

---

[2]"*Public hearing on new Zoning Map and Ordinance*

"The remarks from the audience were recorded.

"Chairman Bruce explained the purpose of this hearing and then asked Mr. Ed Robinson of Hahn, Wise & Barber, to explain the new zones, classifications, etc., as indicated on the map prepared by his office. Mr. Robinson asked that the record show a copy of the Resolution and Legal Notice setting up this meeting. Letters from Smallcomb Motor Company, Mr. J. J. Madden, and Saul Ross were read and ordered filed.

"Saul Ross, Attorney, representing owners of the property between El Camino Real, San Bruno Avenue, Junipero Serra, and Sneath Lane, spoke in opposition to the proposed A-R zone and stated that his clients request that the existing R-3 and C½ zones remain. Mr. A. Conway and G. Williams also spoke in opposition to the A-R zone. Mr. Williams referred to his letter of Nov. 6, 1958, for the record. Reasons for the delay in developing this property under the existing zoning were discussed by Commissioner Cohen and Commissioner Ireton with Mr. Williams."

11, 1959. This transcript did not cover the meeting of June 8, 1959. The city clerk did not know whether members of the council received copies of the transcript, although he received one, and one councilman testified that he, too, had received it. Two councilmen testified they saw no summary of the evidence taken before the planning commission. The trial judge found that no summary of the hearings, as required by law, was provided. In *Hein* v. *City of Daly City,* 165 Cal.App.2d 401, 406 [332 P.2d 120], it was held that although the city council had held public hearings, the failure of the planning commission to make the report required by section 65653, including a summary of the evidence upon which the commission acted, invalidated the ordinance because if the commission is not required to comply with the statute and supply this information to the council, then the intent of the statute that before a zoning ordinance is amended (in this case, enacted) full consideration must be given by both the commission and the council, would be thwarted.

## DECISION

We conclude that there is substantial evidence to support the trial court's finding that the planning commission did not submit findings or summaries of hearings to the city council, and considering that the mode is the measure of the power in such a case as this, we approve the trial court's conclusion of law that the ordinance is null and void. ▮ We cannot, however, support the court's issuing a perpetual injunction, or any injunction, against rezoning the area to administrative-research. There having been, in our opinion, a fatal defect in the manner of enacting the proposed ordinance, matters simply stand the way they were, and the city is free to act in accordance with law. We think it would be improper for us to express an opinion on the constitutionality of the ordinance, if it were passed according to procedure demanded by the statute, and particularly so because of the passage of time.

Judgment modified by striking therefrom the words: "Said defendant City is hereby perpetually enjoined and restrained from rezoning said 77 acres to administrative, research or light industrial use, as said uses are defined in ordinance No. 822 of said City adopted in 1959"; and otherwise said judgment is affirmed. Respondents to recover costs on appeal.

Draper, P, J., and Salsman, J., concurred.