[Civ. No. 26883. First Dist., Div. Four. Oct. 30, 1970.]

CITY OF SAUSALITO et al., Plaintiffs and Appellants, v.
COUNTY OF MARIN et al., Defendants and Respondents;
GULF OIL COMPANY OF CALIFORNIA et al.,
Interveners and Respondents.

554

**COUNSEL**

Myers, Praetzel & Pierce and Robert P. Praetzel for Plaintiffs and Appellants.

Douglas J. Maloney, County Counsel, for Defendants and Respondents.

Bagley, Bianchi & Sheeks and John W. Rosenberg for Interveners and Respondents.

**OPINION**

**RATTIGAN, J.**—In this action for declaratory and injunctive relief, plaintiffs sought to invalidate certain actions taken by the County of Marin in the process of applying its zoning ordinance to "Marincello," a large (2,100-acre) tract located within that county. The individual plaintiffs own land adjacent to the tract: the incorporated limits of the plaintiff city, while not including any part of the tract, are coterminous with some of its boundaries. The named defendants included the County of Marin and its board of supervisors,

planning commission, planning director, and director of public works. Frouge Corporation ("Frouge") and Gulf Oil Company ("Gulf"), Delaware corporations who own Marincello, intervened in the action as parties defendant. The trial court made findings of fact in defendants' favor and entered judgment accordingly. Plaintiffs appeal from the judgment; Frouge, Gulf and the County of Marin appear as respondents.

The judgment in effect upholds (1) the validity of a Marin County ordinance which was enacted by the board of supervisors in February 1965, and which amended the county's zoning ordinance to rezone Marincello as a "P-C district" ("planned community district"); and the validity of subsequent board actions taken pursuant to the zoning ordinance and purporting, successively, (2) to adopt a "master plan" for Marincello as a P-C district and (3) to approve a "precise development plan" for a specific portion thereof. On the appeal, plaintiffs challenge the judgment in all three respects. Because we hold against plaintiffs on the first point but in their favor on the second and third, and because the first point is independent of the others, we consider the three points separately.

### The Rezoning Proceedings
#### (November 1964-February 1965)

In November, 1964, and pursuant to the Marin County zoning ordinance, Frouge and Gulf petitioned the planning commission for a rezoning of Marincello from a "D" classification (in which the ordinance permitted certain residential and agricultural uses not specified in the record) to "P-C" ("Planned Community District"). The planning commission favorably recommended the rezoning to the board of supervisors. On January 19, 1965, and pursuant to notice published six days earlier (on January 13), the board commenced a public hearing on the request. After hearing from several persons on January 19, the board continued the matter to February 2, 1965, for further hearing. No notice of the continued hearing was published. After further hearing the matter on February 2, the board on that date adopted Ordinance No. 1411, amending the Marin County zoning ordinance to rezone Marincello from "D" to "P-C" as requested by its owners.

Plaintiffs challenge the validity of Ordinance No. 1411 upon the ground that notice of the board's proceedings was published only six days before the proceedings were convened, although the statute then in effect (former Gov. Code, § 65654)[1] required such publication 10 days in advance

---

[1]Former section 65654 was repealed and reenacted in a 1965 recodification of the Planning and Zoning Law. (See Stats. 1965, ch. 1880, §§ 8, p. 4350, 6, pp. 4347-4348.) It previously provided (as it does now), by reference to other sections, that the 10-day

of the hearing noticed. In this regard, the trial court found as follows: "IX. Proper notice of the hearing was given, but was published for six days rather than ten days . . . X. Publication of notice for six intsead of ten days was not, in any way, prejudicial to plaintiffs, individually or collectively, or any other persons similarly situated. XI. Publication of said notice for six instead of ten days did not cause plaintiffs to suffer substantial injury or any injury whatsoever. XII. It is not probable that a different result would have ensued if the notice had been published for ten days instead of six days." Under "Conclusions of Law" the court further stated: "I. . . . [Marincello] . . . was properly and legally rezoned from zone 'D' to zone 'P-C' in substantial compliance with applicable law. Marin County Ordinance No. 1411 is, in all respects, a valid and effective enactment of the Marin County Board of Supervisors."[2]

The trial court thus determined that Government Code section 65801 applied to the rezoning proceedings although it had not become law until after the enactment of Ordinance No. 1411;[3] found, as the section permits (see fn. 3, *ante*), that plaintiffs had not been prejudiced by the short notice given of the proceedings; and concluded, as the statute requires in such case, that the rezoning proceedings (and Ordinance No. 1411) were valid.

published notice "shall" be given. (See Gov. Code, present §§ 65853, 65854, subd. (a), 65856.) The code elsewhere provides that in its construction the word "shall" is "mandatory." (*Id.*, § 14.)

[2]Later in its "Conclusions of Law," the court also stated: "IV. The provisions of Government Code Section 65801 are a legislative mandate to the Courts and provide standards against which the [trial] Court was required to determine the validity of the proceedings herein."

[3]The provisions of section 65801 appeared for the first time in the 1965 recodification of the Planning and Zoning Law. (See fn. 1, *ante;* Stats. 1965, ch. 1880, § 6, p. 4346.) The full recodification, including section 65801, took effect on September 17, 1965 (Stats. 1965 [vol. 1] p. A-3), some seven months after the board of supervisors enacted Ordinance No. 1411. This action was filed in March 1966, and decided by the trial court in November 1968.

Now appearing in chapter 4 ("Zoning Regulations") of the Planning and Zoning Law, section 65801 provides as follows: "Formal rules of evidence or *procedure* which must be followed in court shall not be applied in zoning matters, except to the extent that a county or city may provide therefor. No action, inaction or recommendation regarding any zoning matter by any legislative body or any administrative body or official of any county or city shall be held void or invalid or be set aside by any court on the ground of the improper admission or rejection of evidence or *by reason of any error, irregularity, informality, neglect or omission* (*hereinafter called 'error'*) *as to any matter pertaining to* petitions, applications, *notices,* findings, records, hearings, reports, recommendations, appeals *or any matters of procedure whatever*, including, but not limited to, those included in this section, unless after an examination of the entire case, including the evidence, the court shall be of the opinion that the error complained of was prejudicial, and that by reason of such error the party

Plaintiffs do not dispute the sufficiency of the evidence to support the just-quoted findings; they challenge the trial court's invocation of Government Code section 65801 (as indicated by its conclusions of law) upon the asserted grounds that the statute could not be applied (1) retroactively (see fn. 3, *ante*) or (2) substantively. These contentons cannot be sustained; we affirm the judgment insofar as it validates Ordinance No. 1411.

### *Retroactivity of Section 65801*

A statute which is "procedural" in nature—as distinguished from one which is "substantive"—may be given effect as to pending and future litigation even if the event underlying the cause of action therein occurred before the statute took effect. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393-394 [182 P.2d 159]; *Church* v. *County of Humboldt* (1967) 248 Cal.App.2d 855, 857 [57 Cal.Rptr. 79].) Whether it can be classified as "procedural," however, depends upon its effect rather than its form. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* at p. 394.) (2a) The subject matter of Government Code section 65801 relates generally to "procedural" steps required in local zoning proceedings, but its effect is "substantive" because it establishes a standard for validation of those proceedings by a reviewing court whose "procedures" it does not reach. It therefore falls within the general rule that a statute will not be retroactively applied unless legislative intent to the contrary is clear. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865]; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* at p. 394.)

Although it is sometimes stated that such intent must be "expressly declared" by the Legislature (see, e.g., *DiGenova* v. *State Board of Education, supra;* Pen. Code, § 3; Gov. Code, § 9608), the general rule "is not a straitjacket. (3) Where the Legislature has not set forth in so many words what it intended, the rule . . . should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent." (*In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].)

It reasonably appears that the Legislature enacted section 65801 as a curative statute for the purpose of terminating recurrence of judicial decisions which had invalidated local zoning proceedings for technical proced-

---

complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error had not occurred or existed. There shall be no presumption that error is prejudicial or that injury was done if error is shown." (Italics added.)

ural omissions. (E.g., *Hurst* v. *City of Burlingame* (1929) 207 Cal. 134 at pp. 139-141 [277 P. 308]; *Hein* v. *City of Daly City* (1958) 165 Cal.App. 2d 401 at pp. 405-406 [332 P.2d 120]; *Williams* v. *City of San Bruno* (1963) 217 Cal.App.2d 480 at pp. 486-490, 491 [31 Cal.Rptr. 854]. See Cal. Zoning Practice (Cont.Ed.Bar 1969) § 4.17, pp. 113-114.) This legislative purpose would be fully served only if the section were applied in future judicial review (to which it is clearly addressed: see its text, quoted in fn. 3, *ante*), but regardless of whether the offending procedural omission occurred before or after the section's enactment.

■ The Legislature was presumably aware, from the high and growing frequency of zoning litigation in California, that many actions such as this one were pending (or impending, as this one was) when it enacted the section in 1965, and it must have been equally aware of the relevant rule that "a proper validating act may be effective as to pending litigation." (*Miller* v. *McKenna* (1944) 23 Cal.2d 774, 781 [147 P.2d 531]. See *Wall* v. *State of California* (1946) 73 Cal.App.2d 838, 845 [167 P.2d 740].) Still, it did not —as it could have done—state that the section was to be applied only in judicial review of zoning irregularities which occurred after its enactment. In light of these "pertinent factors," we do not find it "impossible to ascertain the legislative intent"; to the contrary, such factors "indicate the Legislature must have intended that the . . . statute should operate in all cases not reduced to final judgment at the time of its passage." (*In re Estrada, supra,* 63 Cal.2d 740 at p. 746.) ■ Accordingly, the trial court properly invoked section 65801 in point of time.

### Substantive Application of Section 65801

Of the trial court's substantive application of section 65801, plaintiffs first contend that the statute cannot be construed to dispense with the 10-day notice requirement because such was essential to due process. It is clear that *some* notice of hearings upon the proposed P-C rezoning was required for due process purposes, because of the effect of zoning upon the ownership and use of property. (*Gilgert* v. *Stockton Port Dist.* (1936) 7 Cal.2d 384, 391 [60 P.2d 847]. See *Litchfield* v. *County of Marin* (1955) 130 Cal.App. 2d 806, 812 [280 P.2d 117]; Cal. Zoning Practice, *op. cit. supra,* § 10.35, pp. 447-448.) In cases where such effect appears, however, "no constitutional mandate . . . [specifies] . . . how that notice is to be given or which form it must take. Therefore the Legislature in prescribing the notice to be given as an essential element of due process is limited only by the inferred constitutional mandate that the notice must be such as would according to common experience be reasonably adequate to the purpose." (*Litchfield* v. *County of Marin, supra* at p. 813 (italics added).) ■ Thus, while the Legislature could not dispense with notice entirely, it was not con-

stitutionally required to provide for notice of 10 days' duration; section 65801, imposing a test of prejudice as the basis of invalidating a zoning ordinance for "irregularity" in "notices," has in effect substituted the adequacy of notice in fact, as distinguished from its formulary duration, as the test of its adequacy for purposes of due process.

Plaintiffs argue that the Legislature could not validly do this because the 10-day notice requirement was "mandatory and jurisdictional." As spelled out in former Government Code section 65654, the requirement was mandatory in terms (see fn. 1, *ante*), and the previously cited decisions which invalidated local zoning actions, for noncompliance with notice and other requirements prescribed by state law, rested upon essentially jurisdictional grounds. (*Hurst* v. *City of Burlingame, supra,* 207 Cal. 134 at pp. 138-139; *Hein* v. *City of Daly City, supra,* 165 Cal.App.2d 401, at pp. 404, 405-406; *Williams* v. *City of San Bruno, supra,* 217 Cal.App.2d 480 at pp. 486, 489-490, 491. See Cal. Zoning Practice, *op. cit. supra,* § 4.17, pp. 113-114.) But, while it thus appears that the notice requirement was literally "mandatory" and historically treated as "jurisdictional," it does not follow that the Legislature was powerless to cure noncompliance with it by enacting a validating statute.

Plaintiffs' argument to the contrary fails to recognize the distinction between jurisdictional prerequisites necessary for due process and those imposed by statute as to procedural matters. ■ While the Legislature cannot cure noncompliance with the former, it can dispense with statutory requirements for "jurisdiction," as to procedural matters, if it had the right to omit such requirements in the first instance and if it acts consistently with due process. (*Miller* v. *McKenna, supra,* 23 Cal.2d 774 at pp. 781-782; *Watkinson* v. *Vaughn* (1920) 182 Cal. 55, 58-61 [186 P. 753]; *Litchfield* v. *County of Marin, supra,* 130 Cal.App.2d 806 at p. 812.) ■ "[T]he legislative power which prescribes the procedure to be pursued in any given proceeding may also legally provide that an irregularity ('jurisdictional' or otherwise, where it does not involve 'due process'), consisted of a failure to carry out the directions in the legislative act as to such procedure, will not render void the object sought to be attained." (*In re East Bay etc. Water Bonds of 1925* (1925) 196 Cal. 725, 735-736 [239 P. 38].)

### The Master Plan and Subsequent Proceedings

This aspect of the appeal requries preliminary analysis of the Marin County zoning ordinance (which, at times pertinent hereto, appeared as title 22 ["Zoning"] of the Marin County Code).[4] Under chapter 22.44 thereof

---

[4]Hereinafter, and unless otherwise indicated, all seven-digit section numbers (e.g., "§ 22.44.020") refer to the Marin County zoning ordinance, others to the state

("P-C District—Planned Community District"), a P-C district "may be established for parcels of undeveloped land" which consist of "open acreage" and are "suitable for, of sufficient size, and can be developed for at least one neighborhood" as the latter term is defined in the county's streets and highways plan. (§ 22.44.020.) After a P-C district is "formed," the "owner or owners of the land within such district shall submit a master plan for the development of all the neighborhood units in which the district is located, which master plan shall be subject to the approval and adoption of the Marin county planning commission and the Marin county board of supervisors in accordance with the provisions of the conservation and planning law of the State of California."[5] (§ 22.44.030.) Until the master plan has been "adopted" for the district, the land within it "shall be considered to be in an A-2:B-3, limited agricultural district" (§ 22.44.080), and any development of the land is limited to such "improvement, land or road grading or subdivision of lands" as will be "in compliance with the regulations governing A-2:B-3, limited agricultural districts." (§ 22.44.030.)[6]

"After the approval and filing of the master plan [for a P-C district], no development and/or land improvement and/or building construction shall be commenced unless and until" (as pertinent here) the planning commission and the board of supervisors have approved a "precise development plan" for any "specific portion of the district" proposed to be developed. (§ 22.44.040, subd. 2.) Approval of a "precise development plan" shall be "by ordinance." (§ 22.44.050.) Neither a master plan nor a precise develop-

---

Planning and Zoning Law (Gov. Code, tit. 7 [commencing with § 65000]) as recodified in 1965. (See fn. 1, *ante*.)

[5] A footnote to the caption of the zoning ordinance makes clear that this reference is to the state Planning and Zoning Law. (Gov. Code, tit. 7 [commencing with § 65000].) The ordinance does not specify whether the board of supervisors, approving a "master plan," should act by ordinance or resolution.

[6] The building and land uses permitted by the "A-2:B-3" designation are not accurately connoted by the term "limited agricultural district." Under other provisions of the zoning ordinance, only the designation "A-2" refers to a "limited agricultural district." (Chapter 22.12 is entitled "A-2 Districts—Limited Agricultural Districts.") Classification as an "A-2" district permits "all agricultural uses," limited commercial uses involving the keeping of animals only, "philanthropic and charitable institutions, hospitals" and related uses, and "all uses permitted in R-1 districts." (§ 22.12.020.) "R-1 districts" are called "One-Family Residence Districts." (Chapter 22.22.) The uses permitted therein include single-family dwellings, various "noncommercial recreational uses" (such as "golf courses"), "crop and tree farming and truck gardening," restricted "home occupations," and certain institutions such as schools and churches. (§ 22.22.020.) Application of the "B-3" designation to any district has the effect of imposing therein a scheduled set of building requirements (area, average width, and front and side setbacks), but does not affect the building or land uses permitted in the district. (§ 22.46.010.) Thus, the uses permitted by the "A-2:B-3" designation are (1) agricultural, (2) single-family residential, and (3) uses which are generally related to both but which are (4) principally noncommercial in character. Industrial uses are not permitted in a district so designated.

ment plan can be approved unless it complies with "the minimum standards as established in the Marin county subdivision ordinance" (which standards are not specified in the zoning ordinance) and certain "limitations" ("density" of families per acre, "building site areas," and building "coverage," "heights" and "bulk") which apply to single-family and two-family residences only. (§ 22.44.090.) Except to the extent that the just-mentioned "limitations" import that residential uses will be permitted in a P-C district, nothing in the ordinance specifies what building or land uses will be permitted or excluded in such district.

Some time after the rezoning of Marincello as a P-C district by the enactment of Ordinance No. 1411, Frouge and Gulf submitted a master plan for its development. After conducting hearings in compliance with the Marin County zoning ordinance, the planning commission approved the plan subject to certain specified conditions. After further hearings in compliance with the ordinance, the board of supervisors approved the plan by resolution (which was adopted by a board vote of three to two). Subsequently, Frouge and Gulf submitted a "precise development plan" which affected the Tennessee Valley area of Marincello and which had to do, principally, with an access road in that area. After hearings before the planning commission and the board of supervisors, the board adopted the precise development plan on April 12, 1966, by enacting Ordinance No. 1507 to that effect. In similar proceedings conducted thereafter (in 1966 and 1967, and after hearings in each instance), the board enacted two ordinances adopting additional "precise development plans" for portions of Marincello and adopted several resolutions amending the master plan in various respects. None of the board hearings conducted in these matters (commencing with, and including, Ordinance No. 1507) was preceded by published notice of hearing.

Concerning Resolution No. 8749 and Ordinance No. 1507, the trial court made these findings: "XVII. On November 12, 1965, the Board of Supervisors adopted Resolution No. 8749 . . . approving the Master Plan [for Marincello]. XXI. After public hearings before the Planning Commission . . . and the Board of Supervisors . . . the Board of Supervisors adopted Marin County Ordinance No. 1507 . . . approving the first Precise Development Plan for said property."

(Plaintiffs requested findings concerning the subsequent 1966-1967 proceedings mentioned above. The trial court made none, nor did it mention the subsequent proceedings in its conclusions of law. No reason for such omissions appears in the record.)

As submitted and finally adopted, the master plan called for a wide vari-

ety of land and building uses, of building details, in Marincello.[7] Notwithstanding this fact, the trial court stated under "Conclusions of Law" that "II. The Master Plan . . . was adopted and approved in strict compliance with all applicable law and is a valid and effective Master Plan for the development and use of . . . [Marincello] . . ." As to the adoption of Ordinance No. 1507, the court further concluded that "III. The first precise development plan for said property was adopted and approved in strict compliance with all applicable law and Marin County Ordinance No. 1507 is a valid and effective enactment of the Marin County Board of Supervisors."

Of these proceedings, plaintiffs first contend that adoption of the master plan by *resolution* was invalid because the plan amounted to a full-scale rezoning of Marincello which could validly be effected only by *ordinance*. We agree with this contention.

According to the evidence, the Marincello tract was undeveloped land before Ordinance No. 1411 rezoned it as a P-C district in February 1965.

---

[7]In the master plan as submitted, an introductory statement reads in pertinent part as follows:

". . . Marincello will be not only a 'planned community'; it will be a 'new city' embracing the full spectrum of land uses. The existing P-C District regulations contained to [*sic*] the Marin County Zoning Ordinance appear to be designed to accommodate the typical suburban residential subdivision containing single-family residences, limited numbers of multiple residential structures (usually two-story garden apartments) and a commercal area intended to serve as a neighborhood shopping center, or occasionally as a regional shopping center. Marincello will be much more. Included within its boundaries will be all classes of residential uses from single-family residential, as well as the complete commercial and light industrial facilities required to create an entirely self-contained and totally independent community. . . ."

As approved by the board of supervisors, the master plan called for single-family residential units on 512 acres of Marincello, "multiple garden apartment" residences on 461.5 acres, and "high-rise residential dwelling structures" on 419.1 acres.

The plan provided for commercial uses in six commercial zones covering 529 acres. In some or all of the zones, the commercial uses to be permitted included retail shops, theatres, neighborhood services, automobile service stations and garages, motels and hotels, restaurants, tourist and convention accommodations, entertainment facilities, "professional uses," offices, movie studios and drive-ins. The "usable floor area" contemplated for commercial uses was almost 3 million square feet.

The plan also called for a "light industrial zone" of 175.6 acres, in which "light industrial and technical crafts uses" and "A-P" uses would be permitted in about 1.6 million square feet of "usable floor area." According to the master plan application, "light industry and technical crafts" meant manufacturing activities in the "electronic and space-age industries," and in such industries as "food, food processing, ordnance equipment and printing and publishing." As used in the Marin County zoning ordinance, the designation "A-P" means "administrative-professional"; "A-P uses" include several types of professional business premises, "radio broadcasting offices and studios" and "television offices and studios."

The full community would have an average ("overall") density of 3.5 dwelling units per gross acre, and a maximum building-height limitation, in some zones, of 16 stories (not to exceed 150 feet).

As a result of that ordinance and pending adoption of the master plan, the land was in effect zoned "A-2:B-3," on an interim basis, with all development thereof prohibited except as permitted by the "A-2:B-3" designation. (See text at fn. 6, *ante*.) The master plan (1) in effect excluded agricultural uses from the tract where the interim classification had permitted them; (2) provided for 800 acres of apartments, with 419.1 acres to be used for "high-rise residential dwelling structures," subject to a height limitation of 150 feet, where the interim classification had permitted single-family residential structures only; (3) supplanted the limited commercial uses permitted by the interim classification with intensive and varied commercial uses of 529.8 acres (about 25 percent of Marincello's full acreage); and (4) permitted industrial use of 175 acres (about 8 percent of the total) where the interim classification had not permitted industrial use at all. (See fns. 6 and 7, *ante*.)

The board's adoption of these proposals in the master plan brought the situation within the rule, stated of a similarly zoned district in an essentially indistinguishable procedural sequence, that such "change or alteration in the actual physical characteristics of the district and its configuration amount to a rezoning of the district and may only be accomplished pursuant to the provisions of the state statutes and the local ordinances consistent therewith providing for zoning and rezoning." (*Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 245-246 [69 Cal.Rptr. 251].)
The board's adoption of the master plan by resolution failed to comply with "state statutes" because the operation operated to rezone Marincello by regulating land and building uses therein "as between agriculture, industry, business . . . [and residence] . . . purposes" within the meaning of section 65850, and that section authorized the board to take such action by ordinance only.[8]

Moreover, the interim ("A-2:B-3") status of Marincello, when zoned as a P-C district, had been effected by ordinance (No. 1411) which amended the Marin County zoning ordinance in the first instance and which had been enacted under the authority vested in the board by section 65850.[9] Marincello thus held its "A-2:B-3" status, after February 2, 1965, by virtue of a zoning ordinance as amended. "A zoning ordinance constitutes the exercise of a governmental and legislative function and is subject to change by the legislative power. [Citations.] . . . The amendment of a

---

[8]As pertinent here, section 65850 provides that "the legislative body of any county . . . *by ordinance* may: (a) Regulate the use of buildings, structures and land as between agriculture, industry, business, residence and other purposes." (Italics added.)

[9]When Ordinance No. 1411 was enacted on February 2, 1965, section 65850 appeared in the Government Code as section 65800. It was repealed, reenacted and renumbered, without substantive change, in the 1965 recodification of the Planning and Zoning Law which took effect on September 17, 1965. (See fns. 1 and 3, *ante*.)

legislative act is itself a legislative act. The power to legislate includes by necessary implication the power to amend existing legislation. ▮▮▮ Rezoning of use districts or *changes of uses and restrictions within a district can be accomplished only through an amendment of a zoning ordinance, and the amendment must be made in the same mode as its original enactment.* [Citations.]" (Italics added.) (*Johnston* v. *City of Claremont* (1958) 49 Cal. 2d 826, 834-835 [323 P.2d 71]; *Richter* v. *Board of Supervisors* (1968) 259 Cal.App.2d 99, 105 [66 Cal.Rptr. 52]; 8A McQuillin, Municipal Corporations (1965 rev. vol.) § 25.245, pp. 164-165.)

Respondents contend that the board's action in adopting the master plan was analogous to the granting of a conditional use permit, which ordinarily does not require legislative action amending an underlying zoning ordinance because the act of granting such permit is administrative in character and does not involve a change in the ordinance. In support of this argument respondents cite *Case* v. *City of Los Angeles* (1963) 218 Cal.App.2d 36 [32 Cal.Rptr. 271], upon which the trial court apparently relied in analyzing the board's action. The *Case* analogy would apply, however, only where the underlying zoning ordinance provides for the issuance of such permits and "establishes criteria" for the determination of "such matters" by the local agency it authorizes to issue the permit. (§ 65901.) The zoning ordinance in *Case* contained such provisions (*Case* v. *City of Los Angeles, supra,* at pp. 37-38, 40), as did the ordinances respectively involved in the decisions cited by the *Case* court on this point. (*Essick* v. *City of Los Angeles* (1950) 34 Cal.2d 614, 617, 624 [213 P.2d 492]; *Wheeler* v. *Gregg* (1949) 90 Cal. App.2d 348, 360-361 [203 P.2d 37].)

By contrast, the Marin County zoning ordinance prescribed no "criteria" for a P-C district, pending adoption of a master plan for a specific district, except for the previously mentioned "limitations" which applied to "family" occupancy only and which did not permit non-residential uses within the district. Because the *Case* decision is clearly distinguishable, respondents' analogy fails. As the *Millbrae* court stated in denying a similar contention, "The argument urged by interveners that the . . . changes are analogous to the granting of a use permit . . . is not applicable here. The cases cited by them apply to situations where the property is validly zoned for a particular purpose and the . . . conditional uses are permitted as being within the scope and purpose of the zoning ordinance. Here, . . . the proposed changes do not constitute 'use permits' amounting to permissible variances but are substantial alterations in the zoning which is peculiarly indigenous to the established zoning district." (*Millbrae Assn. for Residential Survival* v. *City of Millbrae, supra,* 262 Cal.App.2d 222 at p. 246. Cf. Cal. Zoning Practice, *op. cit. supra,* §§ 7.63-7.64, pp. 298-299.)

Because it thus appears that a "legislative act" was necessary to accomplish the purposes intended for Resolution No. 8749, we should here consider the effect of *Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448 [85 Cal.Rptr. 809, 467 P.2d 537] (decided during the pendency of this appeal). The *Wheelright* case developed when certain Marin County voters undertook to circulate and file a referendum petition protesting the enactment of Ordinance No. 1507 by the same board of supervisors on April 12, 1966, adopting a "precise development plan for the construction of the Tennessee Valley access road into Marincello." (*Id.*, at p. 452.) The factual issue presented was whether the circulators had produced enough valid signatures on the petition to qualify the question for the ballot. (*Id.*, at pp. 451-452.) Affirming a superior court judgment against them in this regard (*id.*, at pp. 454-457), the Supreme Court also held that Ordinance No. 1507 was in fact subject to referendum proceedings (Cal. Const., art. IV, § 1 [now art. IV, § 25]) because its subject matter made it legislative, rather than administrative, in character. (*Wheelright* v. *County of Marin, supra*, at pp. 457-458.)

■ As a background fact, the *Wheelright* court mentioned the prior adoption of the Marincello master plan "by resolution" in 1965 (*id.*, at p. 452), but the appeal before it neither determined nor involved the validity of the resolution (No. 8749), nor of Ordinance No. 1507, against the challenge asserted in the present case. While *Wheelright* is not controlling here (for the latter reason), the decision does indicate that Resolution No. 8749, by reason of its content and scope, was also "legislative" in character. (*Wheelright* v. *County of Marin, supra*, at pp. 457-458.) This being so, the question is whether it was such "legislative action" as would validly accomplish its intended purposes. ■ We answer the question in the negative because, although the resolution was "legislative" in *substance* and for purposes of referendum proceedings (*id.*), it was invalid in *form* because it was not executed by ordinance.

■ Despite the facts that Resolution No. 8749 was adopted by the board of supervisors after noticed and extensive hearings, and with the same three-vote majority which would have been required to enact an ordinance (§ 25005), we are not at liberty to ignore the very real difference between a "resolution" and an "ordinance." ■ "The resolution of a board of supervisors is ordinarily not equivalent to an ordinance. A resolution is usually a mere declaration with respect to future purpose or proceedings of the board. An ordinance is a local law which is adopted with all the legal formality of a statute." (*McPherson* v. *Richards* (1933) 134 Cal.App. 462, 466 [25 P.2d 534]. See *Housing Authority* v. *Superior Court* (1950) 35 Cal.2d 550, 558-559 [219 P.2d 457]; 5 McQuillin, Municipal Corporations (1969 rev. vol.) §§ 15.02-15.08, pp. 42-66; 37 Am.Jur., Municipal

Corporations, § 142, pp. 754-755.) A resolution adopted without the "formality" required of an ordinance cannot be deemed an ordinance. (5 McQuillin, *op. cit. supra,* § 15.02, pp. 46-47.) A duly enacted county ordinance is a "law of this State" within the meaning of a penal statute proscribing the violation of such law (*In re Groves* (1960) 54 Cal.2d 154, 158 [4 Cal.Rptr. 844, 351 P.2d 1028]; *County of Plumas* v. *Wheeler* (1906) 149 Cal. 758, 768 [87 P. 909]); a board resolution is not.

 The Legislature has been explicit concerning this distinction. It has exacted certain "formalities" in the enactment of an ordinance by the supervisors of a county (§§ 25120-25121), but not of their adoption of a resolution. It has specified certain requirements relative to the publication of a county ordinance after its passage (§§ 50021, 25124), its deferred effective date in the typical case (§ 25123), its mandatory recording in an "ordinance book" (§§ 25102, subd. (b), 25122); compare § 25102.1, as to the recording of resolutions, and the codification of ordinances generally (§§ 25126-25130, 50022.2-50022.5); none of these requirements apply to board resolutions. By statute, the Legislature has made the terms "ordinance" and "resolution" synonymous in a very few instances, each of which is highly specialized and applies to a city only (Gov. Code, § 60004; Sts. & Hy. Code, §§ 8007, 8305); in innumerable other statutes authorizing or directing actions by county boards of supervisors, it has been careful to state whether the specific action shall be taken by "ordinance" or by "resolution" in each case.[10] It has emphasized the distinction between the two terms by further providing that, when a statute requires local legislative action by resolution but a local charter requires that it be taken by ordinance, "action by ordinance is compliance with the statute for all purposes (§ 50020); it has made no converse statutory provision to the effect that a "resolution" will suffice, where a statute requires action by "ordinance," under any circumstances.

 Because the difference between a "resolution" and an "ordinance" is thus substantive, under case law and by deliberate legislative definition, the one (Resolution No. 8749) cannot be construed as having amounted to the other in this case. Accordingly, and because the practical effect of Resolution No. 8749 was to rezone Marincello, it was invalid for failure to exercise the board of supervisors' rezoning power by ordinance as state law requires (§ 65850, subd. (a), quoted in fn. 8, *ante*), and for failure to amend the Marin County zoning ordinance by legislative action of equal

---

[10]Although such cases are far too numerous to permit a full catalog here, we observe that the index of one current Government Code lists at least 50 sections thereof which require county supervisors to act by ordinance, and at least 30 more requiring action by resolution. (37A West's Gov. Code Ann. (1964 ed.) Index, pp. 507-508 ["Ordinances," "Counties"], 574 ["Resolutions," "County Supervisors"].)

dignity therewith. (*Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826 at pp. 834-835; *Richter* v. *Board of Supervisors, supra,* 259 Cal.App.2d 99 at p. 105; 8A McQuillin, Municipal Corporations, *op. cit. supra,* § 25.245, pp. 164-165.) Because the defect was substantive, it could not have been cured under the validating power vested in the trial court by section 65801: that section, although effective in November 1965, without any necessity of retroactive application (see fn. 3, *ante*), could not reach substantive defects because it was expressly limited to the validation of irregularities in local zoning "procedure" only. (See its text, quoted *id.*) Absent the availability of validation, the resolution was fatally defective under the general rule that ". . . a county is a creature of limited powers, having only those powers which are delegated to it by the Constitution or the Legislature. And when a county acts as it does here under authority derived from a statute, it must strictly follow the statutory provisions; the mode of the power is also the measure of the power. [Citations.]" (*Richter* v. *Board of Supervisors, supra,* at p. 105.)

■ The effect of Ordinance No. 1507 in this situation, and its validity in and of itself, must be measured by somewhat different standards. One of them arises from the previously stated fact that the hearing which produced its enactment on April 12, 1966, was preceded by no published notice of hearing at all. As we have also stated (see fn. 1, *ante,* and accompanying text), the state Planning and Zoning Law required some such notice of a hearing upon a proposed amendment to a local zoning ordinance, and the complete absence of such notice is not an "irregularity" within the reach of the validating power vested in a reviewing court by section 65801 of the state law. (See fn. 3, *ante.*) For these reasons, Ordinance No. 1507 cannot be construed as having operated to amend the Marin County zoning ordinance as to the portion of Marincello it affected: although it was an "ordinance" where Resolution No. 8749 was not, it did not produce any part of the result which had been totally undelivered by the resolution.

Apart from its failure to amend the Marin County zoning ordinance, but for the same reasons just stated therefor, Ordinance No. 1507 did not by implication repeal any provision of the zoning ordinance with which it was incompatible. (See *Iscoff* v. *Police Com.* (1963) 222 Cal.App.2d 395, 409 [35 Cal.Rptr. 189]; 6 McQuillin, Municipal Corporations, *op. cit. supra* (1969 rev. vol.) §§ 21.20-21.22, pp. 223-231.) ■ Because it purported to adopt a precise development plan for Marincello before the enacting board of supervisors had validly (i.e., by ordinance) adopted a master plan for the tract, Ordinance No. 1507 was wholly incompatible with the provision of the Marin County zoning ordinance (§ 22.44.040, quoted *supra*) which permitted adoption of a precise plan only *after* "approval and

filing of the master plan" for a P-C district. Hence, it (Ordinance No. 1507) was invalid: not because it was formally defective under state law (as was true of Resolution No. 8749), but because its enactment violated an applicable local ordinance which state law precluded it from reaching and which required a valid master plan as a condition precedent of its valid enactment.

In summary, and as to the trial court's findings and conclusions quoted herein, the court's statements in its conclusion No. "II" (that "the Master Plan . . . was adopted and approved in strict compliance with all applicable law and is a valid and effective Master Plan . . .") are incorrect because they are unsupported by the finding ("XVII") that the board action was taken by resolution. The court's statements in conclusion No. "III" (that "[T]he first precise development plan for . . . [Marincello] . . . was adopted and approved in strict compliance with all applicable law [,] and Marin County Ordinance No. 1507 is a valid and effective enactment . . .") are incorrect because the enactment mentioned did not, in fact, succeed the valid adoption of a master plan as the Marin County zoning ordinance requires. The inaccuracies in the quoted conclusions mean that the trial court's findings do not support the judgment with respect to the validity of Resolution No. 8749 and Ordinance No. 1507; in both respects, we must therefore reverse the judgment and direct the entry of a new one.

As we do this, we should also take into account the successive proceedings which, in 1966 and 1967, followed the enactment of Ordinance No. 1507. The ordinances which were thereafter enacted, as to Marincello, were invalid for the same reasons that Ordinance No. 1507 was; the resolutions thereafter adopted on the same subject were similarly invalid because they purported to amend a master plan which did not exist. All were encompassed in the pleadings, and plaintiffs requested findings concerning them. As no reason appears for the trial court having ignored these matters in its findings and conclusions, none appears that we should ignore them on the appeal. We therefore include them in the directions hereinafter stated to the trial court.

### The Question of Laches

Respondents also contend that the appeal must fail upon the asserted ground that appellants were guilty of laches, as a matter of law, for having unreasonably delayed the commencement of this action. As part of this contention, it is urged that the interveners were prejudiced by the claimed delay because they started development of Marincello as soon as the formal rezoning ordinance (No. 1411) had been enacted. But the record does not support the latter assertion: the trial court excluded any evidence of the interveners' activities, as claimed, upon the stated ground that the Marin County zoning ordinance prohibited development in a P-C district "even

after the adoption of a master plan and prior to the adoption of a precise plan," and made no finding concerning delay or laches. Respondents have not appealed from the judgment in these or any respects. Lacking evidence that they were prejudiced by any delay, we are unable to determine that appellants' forbearance from suit amounted to laches. (See 4 Witkin, Summary of Cal. Law (7th ed. 1960) Equity, § 13, pp. 2796-2798.) Moreover, appellants commenced the action about four months after the master plan had purportedly been approved with the adoption of Resolution No. 8749 (and before any proceedings occurred relative to any precise development plan). The "delay" thus involved is not shown to have been unreasonable. Therefore, and because nothing in the record supports the contention that appellants were guilty of laches as a matter of law, we decline to hold to that effect.

Insofar as it validates Marin County Ordinance No. 1411 and the rezoning of the affected property as a "P-C district" pursuant to the Marin County zoning ordinance, the judgment is affirmed. Insofar as it validates the "master plan" for said property purportedly approved by Resolution No. 8749 of the Marin County Board of Supervisors, Marin County Ordinance No. 1507 and the "precise development plan" purportedly adopted thereby, and all subsequent proceedings affecting said property and challenged in the pleadings and at trial herein, the judgment is reversed. The cause is remanded to the trial court with directions to enter an appropriate judgment, in plaintiffs' favor, invalidating such proceedings and actions, and granting relief as prayed in the complaint in this action, consistent with the views herein expressed. Each side shall bear its own costs on appeal.

Devine, P. J., and Christian, J., concurred.

The petition of the interveners and respondents for a hearing by the Supreme Court was denied December 23, 1970. Tobriner, J., did not participate therein.